**ERWIN et al. v. HAYS.**

No. 6736.

Court of Civil Appeals of Texas.

Texarkana.

March 25, 1954.

Rehearing Denied May 6, 1954.

Ramey & Ramey, Sulphur Springs, Pollard, Reeves & Boulter, Robert S. Boulter, Tyler, for appellants.

Artie Stephens, Sulphur Springs, Craven Beard, Tyler, for appellee.

WILLIAMS, Justice.

Predicated on the establishment of an alleged constructive trust based on a joint adventure, as pleaded by appellee, Leon Hays, plaintiff below, recovered of and from appellants Andrew V. Erwin and Vernon Whitley, defendants below, "an overriding royalty interest, the equal of $\frac{1}{32}$ of $\frac{7}{8}$ part of all oil, gas and other minerals which may have been or may be produced from" certain tracts of land as therein described in the pleadings and judgment. Whitley, d/b/a Whitley Drilling Company, held a drilling contract under Erwin, and the two present a joint appeal. No complaint is urged to the entry of a "take nothing" judgment in favor of Sells Petroleum Company or to the court's action in instructing a verdict in favor of W. D. Felder, Jr., the fourth defendant.

In response to special issues, the jury found (1) that "Hays and Erwin entered into an agreement to acquire jointly a 'farm-out' of the oil and gas leases held by the Sells Petroleum Company on the lands near Pickton in Hopkins County, involved in this cause;" (2) "that under such agreement, Hays was to have for his efforts a $\frac{1}{32}$ overriding royalty interest in said leases in question; and (3) "that Hays and Erwin, acting together, did acquire a farm-out of the oil and gas leases held by Sells Petroleum Company on the lands involved herein." The agreement so sustained by the jury rests wholly in parol. No other issues were submitted and no complaint is made to the refusal to submit any other special issue.

The special exceptions urged by appellants to certain pleadings of Hays, their motion for instructed verdict and for judgment non obstante veredicto are embodied and can be summarized as stated in their points 11 and 12, namely: (11) "That the trial court erred in failing to find as a matter of law that the purported agreement of Hays and Erwin was an oral contract creating an express trust in land, which is prohibited by the Texas Trust Act, art. 7425–B, R.C.S. of Texas [Vernon's Ann.Civ.St. art. 7425b–1 et seq.];" and (12) "That the trial court erred in failing to find as a matter of law that the purported contract between Hays and Erwin was in violation of the statute of frauds, art. 3995, R.C.S. of Texas."

Secs. 2 and 7, the pertinent provisions here of art. 7425b, supra, state, art. 7425b–2: " 'Trust' for the purpose of this Act means an express trust only, and does not include resulting or constructive trusts," nor certain other trusts not here material; and if an express trust as defined in art. 7425b–7 relates to or consists of real property it "shall be invalid, unless created, established, or declared: 1. By a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing; 2. By any other instrument under which the trustee claims the estate affected." Art. 3995, supra, also relied upon, provides: "No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * 4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year".

■ The applicable provisions of the Trust Act are set out verbatim in Fitz-Gerald v. Hull, Tex.Sup., 237 S.W.2d 256, and will not be repeated here. Litigants fully recognize that an express trust as therein detailed as to real property unless based upon a written instrument is unenforceable, but as fully discussed in above cited case, upon which plaintiff relies, a constructive trust as to real property is enforceable. Erwin flatly denied that he had made any kind or character of an agreement or a trade with Hays with respect to the farm-out or any other type of property at any time. So his testimony would not create any type of a trust or agreement. His testimony and that of the evidence he adduced is in irreconcilable conflict in every detail to the evidence adduced by Hays. We deem it unnecessary to detail the evidence other than such portions which are pertinent to above questions of law, namely, whether any alleged constructive trust finds support under the terms of the alleged agreement.

■ In passing upon the motion of the type presented, the trial court is governed by the test of whether or not there has been introduced on the trial of a case any testimony of such probative force as to raise an issue of fact. If so the motion must be denied. "Any inference which reasonably may be drawn from the testimony must be indulged against granting a motion for an instructed verdict." Self v. Becker, Tex.Civ.App., 195 S.W.2d 701, 702, citing White v. White, 141 Tex. 328, 172 S.W.2d 295. See also Hull v. Fitz-Gerald, Tex. Civ.App., 232 S.W.2d 93, 96. The details of the alleged agreement and the facts and circumstances surrounding same, concisely stated, and the inferences to be drawn therefrom by the jury, which follow, are based on above rule. See Rule 301, Texas Rules of Civil Procedure.

According to the testimony of Hays, he and Erwin met in the latter's office in Tyler, Texas, on the day after a drill stem test of the Magnolia-Payne well in the Pickton field indicated it to be a producer. After a discussion about this new well, Erwin said, "Do you have anything up there?" "I said, now I have something up there we are interested in probably, but before we go into it, I want this understanding— before we discuss the thing any way, before I divulge where the property is or whose it is, before we go into the field and get it,

I am going to have $\frac{1}{32}$ of this deal and that's never going to be changed, if there is any chiseling done, it is going to have to come out of the $\frac{7}{8}$ interest and not off the $\frac{1}{32}$." He replied "That is the only way to do it, to have an understanding, and that's agreeable." "I then showed him and we discussed the leases that I had in mind, who owned them, and the locations with respect to the Payne discovery well." "We looked at a crude map that I had prepared which showed the approximate location of three leases then owned by Sells Petroleum Company in this area." In this first meeting he informed Erwin of his former employment with the Sells Company, his intimate acquaintance with its officials and his knowledge of the policies of the company in farming-out various leaseholds. At Hays' suggestion, contact by telephone was made the same day with the general attorney for the company in order to have first chance on any farm-out that Sells might consider. It was agreed that Erwin would take the lead in the negotiations as Hays on account of his former associations did not wish to place any official in an embarrassing situation. A series of conferences followed between Erwin and the company and between Erwin and Hays from April, 1950, until September 8, 1950, when the farm-out agreement was executed and delivered by the Sells Company. Hays was in the outer office at the time of delivery of the farm-out contract. His evidence details the repeated efforts of Hays to secure a letter or some kind of a written statement from Erwin upon Hays' discovery that his name had been omitted from the contract. Later on Hays gave written notice of his claim of the interest to the various parties then dealing with Erwin on the farm-out deal. It was Erwin's testimony that he contacted various parties to interest them in developing the leases, relating his various contacts at different places; that his expenses in securing the farm-out and in his efforts to get the property drilled were nominal, such as the expenses of making various trips and telephone and telegraph calls. It was Hays' testimony that Erwin refused to cooperate with him after Erwin had secured the contract in his own name from the Sells Company.

According to the transcribed shorthand notes taken on February 4, 1951, in a telephone conversation, Erwin remarked, "Mr. Hays has nothing to worry about and he has no reason to question that we are partners in the deal and nobody is trying to beat him—there is no reason for him to bring suit, I have got along with him before and we agreed on our interests as we are partners in the deal. We agreed on the Rock Hill deal and we can on this one." On February 17, 1951 in a second telephone talk which probably caused suit to be filed shortly afterwards Erwin replied in substance, "What does Hays want, does he think he has an interest in that deal, what is the boy talking about?"

In his notices of his interest to various parties given some three months later and a few weeks prior to suit Hays referred to his interest as a "silent partner" and in a subsequent notice he uses the language, "my interest in above described leases"; and "I request you to protect our mutual interest." In response to the questions on when or from whom he would acquire the $\frac{1}{32}$ interest, he answered "that would be retained to me after we procured our farm-out, and whoever we made a deal with, $\frac{1}{32}$ would be retained out of that $\frac{7}{8}$ and whoever we made a deal with would not get full $\frac{7}{8}$, in other words, he would get $\frac{7}{8}$ less $\frac{1}{32}$." "Q. That was to be retained by who? Who was to reserve that for you please, sir; who was to retain it? A. At the time I made an assignment I would retain it, reserve it." "No discussion whose name it was to be taken in, that was a matter that was to be far down the road, we didn't even have the thing yet; what we were interested in was getting the thing and we didn't talk about in whose name it was to be taken." "As to how the lawyers, when they got through with it, how it would absolutely go on record to me I didn't know exactly." In the language of one unlettered in legal elements, Hays

relates the details of their agreement in the words of a layman, such as, "before *we* discuss the thing"; "before *we* go into the field and get it"; "I am going to have ⅓₂ of the deal, and that's never going to be changed"; that "he never told Erwin that he (Erwin) could take this farm-out, if he could get it, in Erwin's name"; "that would be retained to me after we procured our farm-out, and whoever we made a deal with, ⅓₂ would be retained out of that ⅞"; "at the time I made an assignment I would retain it—reserve it"; and "no discussion whose name it was to be taken in, that was a matter that was to be far down the road, we didn't even have the thing yet."

In above description of the agreement together with all the facts and circumstances, both prior and subsequent thereto in evidence, the jury found that they entered into an agreement to acquire jointly the farm-out; Hays was to have the ⅓₂ interest; and through their joint efforts in this joint enterprise they acquired it.

■ The judgment of the court will not be disturbed on the ground, as urged that as a matter of law appellants were entitled to an instructed verdict or that their motion for judgment non obstante veredicto should have been granted. Upon the authority of Fitz-Gerald v. Hull, Tex. Supp., 237 S.W.2d 256, and that of McDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334, both applicable in all material respects to the present record, this judgment based on a constructive trust is sustained.

■ "An agreement between two or more persons for the joint acquisition of land is not a contract of sale of the land, and therefore is not required under our statute of frauds to be in writing." Mac-Donald v. Sanders, Tex.Civ.App., 207 S.W. 2d 155, 157, reaffirming this principle of law as stated in James v. Fulcrod, 5 Tex. 512. Based on this principle of law and the conclusions hereinbefore expressed that a constructive trust is here sustained, the claim of appellants that the claim is unenforceable by reason of art. 3995, supra, is overruled.

Based upon the principles of law cited and discussed in the Fitz-Gerald v. Hull case, supra, the other points which are directed to the legality of the alleged constructive trust are respectfully overruled.

The judgment of the district court is affirmed.