E. G. OMOHUNDRO, Appellant,

v.

Frank D. MATTHEWS, Jr., et al., Appellees.

No. 6177.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 16, 1958.

Rehearing Denied Nov. 19, 1958.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, B. F. Whitworth, Jasper, for appellant.

Ernest S. Fellbaum, Houston, for appellees.

R.· L. MURRAY, Chief Justice.

Appellees Frank D. Matthews, Jr., and Ray James Thompson, Jr., sued the appellant, E. G. Omohundro, in the district court of Jasper County to recover an undivided one-third interest each in a one-sixteenth overriding royalty interest which the appellant Omohundro acquired from Slick Oil Corporation on certain lands in Jasper County. Appellees and the appellant, in April, 1955, entered into a joint venture by which they agreed to work together to obtain and develop what they all refer to as a farmout of the Humble Oil & Refining Company's leases in Jasper County. The agreement was that they all would work together on the deal, that all profits would be divided equally between them and that they would work with a purpose in mind of securing the drilling of wells and establishing oil production in the area of the farmout of the leases held by Humble. They secured the farmout from Humble, and got a well drilled by one Sharp and another by one Owen, both of which resulted in dry holes. Thereafter the parties got into a disagreement over how some of the business was to be handled and they divided up the profits from the sale of some of the assets of the venture. Thereafter, at Omohundro's request, the Humble allowed the N. B. Hughes lease to expire, because of failure to make annual payments. Humble's right as lessee terminated March 24, 1956, when the annual rental payment was not made. On March 28, 1956, four days later, Slick Oil Corporation secured a lease on the Hughes and other property as a result of the deal which originated between Omohundro and Slick Oil Corporation around the middle of March, 1956. Shortly thereafter Slick Oil Corporation conveyed to appellant Omohundro a one-sixteenth overriding royalty interest on the leases acquired. This was the subject matter of this suit.

The case was tried to a jury and the jury by its verdict made the following findings:

"(1) Plaintiffs and defendant agreed in April of 1955 to use their joint efforts in getting wells drilled in the area described in the Humble farmout letter to defendant and to share all profits and benefits therefrom equally.

"(2) Such agreement was to extend for such length of time as the plaintiffs and

defendant owned interests in such Humble farmout leases.

"(3) Such agreement was in effect on March 23, 1956.

"(4) Plaintiffs were thereby induced to devote their efforts to obtain development of the area.

"(5) Defendant allowed the N. B. Hughes, et al, lease to Humble Oil & Refining Company to expire by non-payment of rentals, in order to comply with his agreement with Slick Oil Corporation.

"(6) Defendant failed to give full account to either of the plaintiffs of his negotiations in February and March of 1956 with Slick Oil Corporation, until after March 23, 1956.

"(7) Defendant used information and materials he had acquired in his previous activities with the plaintiffs in connection with the area for the purpose of inducing Slick Oil Corporation to make the deal with him.

"(8) The agreement found in Special Issue No. 1 was not terminated by mutual agreement of the parties on or before December 14, 1955.

"(9) The purpose of the joint efforts inquired about in Special Issue No. 1 had not been fully completed by the date that the Owen well was dry and abandoned.

"(10) The parties did agree in April, 1955, as to how long the joint efforts should continue.

"(11) The parties did not enter into a series of separate and distinct agreements relating to the Humble farmout leases.

"(12) On June 25, 1955, the agreement between the parties was not solely to share equally in the overriding royalty interest reserved to defendant in the latter agreement with Frank Sharp.

"(13) Prior to December 14, 1955, plaintiffs and defendant did not mutually agree to partition and distribute to each of the three his proportionate share of the reversionary interest reserved by defendant in his assignment to Owen, dated November 4, 1955.

"(14) Special Issue No. 14 was predicated on 13 and was not answered by reason thereof.

"(15) The agreement or agreements between the parties relating to the Humble farmout leases had not been fully performed and was still in effect by December 14, 1955."

Thereafter the court rendered judgment for the appellees, decreeing an undivided one-third interest in such overriding royalty interest to each of the appellees.

The appellant filed a motion for instructed verdict at the conclusion of all the evidence, filed a motion for judgment notwithstanding the verdict, and after the judgment was entered against him filed a motion for a new trial and his amended motion for new trial. The trial court overruled all such motions and the appellant has perfected his appeal to this court for a review of the judgment. Appellant brings his appeal under 35 points of error. He has properly grouped his points and they fall into the following five broad issues in dispute. Under these groups of points, the contentions of the appellant are summarized in his brief, as follows:

"(1) Plaintiffs seek to enforce an express trust in violation of the Texas Trust Act. (First point)

"(2) Any joint venture entered into by plaintiffs and defendant had been terminated, dissolved and abandoned, by the time defendant made his deal with Slick Oil Corporation, resulting in the overriding royalty interest assigned to him by Slick. (Second through Ninth points)

"(3) Plaintiffs did not establish the agreement under which they claim, and that said agreement was still in effect when

defendant acquired his overriding royalty interest, with clear, satisfying and convincing evidence, as required by law. The overwhelming preponderance of the evidence establishes separate agreements with respect to each well promoted by the parties. (Tenth through Twenty-fourth points)

"(4) Plaintiffs seek equitable relief and do not come into court with 'clean hands'. (Twenty-fifth through Twenty-ninth points)

"(5) Plaintiffs did not prove nor obtain a jury finding of defendant's bad faith at any time material hereto. Judgment should at least be limited to one or the other of plaintiffs and to the Hughes lease only. (Thirtieth through Thirty-fifth points.)"

Appellees on the contrary say that they do not seek to enforce an express trust but alleged and proved a trust for their benefit which arose from the conduct of the parties, and that such trust is not forbidden by the Texas Trust Act, Vernon's Ann.Civ.St. art. 7425b–1 et seq.; that the joint venture entered into by the parties was still in existence at the time the appellant made his deal with Slick Oil Corporation, and that under the evidence and the findings of the jury on all issues necessary to prove their suit and the court's judgment in their favor was proper under such evidence and verdict.

By his first point, under which the appellant contends that appellees seek by their suit to enforce an express trust in violation of the Texas Trust Act, the appellant says that under their pleading the appellees assert that according to the original agreement between the parties the interests of the parties to the joint venture to develop the Humble farmout leases was an oral agreement, and also that such interests were to be taken in the name of appellant Omohundro. He argues that by the standard laid down by the Supreme Court in the case of Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 259, such an agreement is one for an express trust. Appellant in his brief quotes

extensively from a dissenting opinion in that case by the late Judge Smedley. The appellant also quotes portions of the opinion in Fitz-Gerald v. Hull, supra, which from his viewpoint would characterize the agreement before us for consideration as an express trust such as is forbidden by the Texas Trust Act, unless executed in writing. We think it is clear from a reading of the entire opinion in Fitz-Gerald v. Hull that the Supreme Court did not base its holding therein upon the fact that the agreement in that case was that one of the partners or joint adventurers should take title in the name of both the parties but took title in his name alone. We note the following quotation from the opinion in Fitz-Gerald v. Hull:

"Under such state of facts when the petitioner took title to the property in his own name in violation of his promise, and of the original agreement made between the parties, he held the title to an undivided one-half interest for the benefit of, and in trust for, the respondents. This trust arose not because there was any agreement for the title to be taken in the name of the petitioner, and the property to be held by him in trust for the respondents—as would be necessary to constitute an express trust—but, because under the facts, equity would raise the trust to protect the rights of the respondents, and to prevent the unjust enrichment of the petitioner by his violation of his promise and duty to the respondents to take title in the name of the three of them, and for their mutual profit and advantage."

We think it is clear that the court impressed a trust upon the property in Fitz-Gerald v. Hull and also in Erwin v. Hays, Tex.Civ.App., 267 S.W.2d 884, writ refused, n. r. e., because under the facts a constructive trust arose from the actions of the parties and equity imposed the trust to prevent the unjust enrichment of one party by his violation of his duty to his joint adventurer. The facts in Erwin v. Hays, supra,

are very similar to the facts in the instant case and the contention before the court there was the same as here, that is, that the agreement was oral and was unenforceable under the provisions of the Texas Trust Act. In Erwin v. Hays the court discussed the holding in Fitz-Gerald v. Hull, supra, and stated again that while an express trust as discussed in Fitz-Gerald v. Hull was unenforceable as to real property unless based upon a written instrument, nevertheless a constructive trust as to real property is enforceable under certain facts and circumstances.

■ In the instant case, the jury found, and the evidence sustained such finding, that there was an original agreement between the appellant and the appellees to use their joint efforts to develop the lands described in the "Humble farmout" letter. After the joint venture had been in existence for almost a year, the appellant made his deal with Slick Oil Corporation, Slick Oil Corporation secured a lease on the Hughes tract and other tracts included in the "Humble farmout" letter, and appellant secured the one-sixteenth overriding royalty interest from Slick Oil Corporation which is the subject matter of this suit. Under the holdings in Fitz-Gerald v. Hull; Erwin v. Hays; Mellette v. Hudstan Oil Corporation, Tex.Civ.App., 243 S.W.2d 438, writ refused, n. r. e., Wilson v. Therrell, Tex.Civ.App., 304 S.W.2d 723, and authorities cited in such cases, the appellees did not seek to enforce an express trust, but sued for and established a constructive trust for their benefit in the mineral and leasing rights, the one-sixteenth overriding royalty interest, which the appellant secured from Slick Oil Corporation. We have concluded, therefore, that the trial court did not err in overruling the appellant's motion for judgment non obstante, and the appellant's first point is overruled.

■ Under his second group of points, Nos. 2 through 9, the appellant contends that the joint venture entered into between

him and the appellees had been terminated, dissolved and abandoned by the time he secured the overriding royalty interest from Slick Oil Corporation. Under this group of points the appellant quotes extensively from the testimony in the case, including that of all three parties to the lawsuit. He contends that certain of the testimony of both the appellees amounted to judicial admissions on their part that the joint venture of the parties had terminated at the time of his deal with Slick Oil Corporation. In particular, he relies upon the fact that the parties settled up and divided the profits from the Owen and Sharp wells which were drilled and also upon the fact that the parties were in strong disagreement about what was to be done about certain parts of their joint venture. The parties got into a quarrel at some place in Houston, either at a restaurant or a hotel room, and both Matthews and Thompson stated that at that time they did not want to have anything to do with appellant in the future and that they would in the future take separate courses. The general understanding at that time was that all future relationships were terminated between them, Mr. Matthews testified. He also testified that "there was a mutual agreement that neither one of us wanted to be involved with each other any more; and that pertained to any new deals or any further meetings." There was a large amount of testimony and other documentary evidence in the record, and the appellees both expressly denied in their testimony that they ever abandoned or intended to abandon any of the leases acquired by Slick Oil Corporation. We have examined the testimony relied upon by both the appellant and the appellees in their briefs and have concluded that the findings of the jury are supported by the evidence, such findings being to the effect that the joint venture was still in existence and had not been mutually abandoned at the time the appellant made the deal with Slick Oil Corporation. Although it is apparent from certain portions of the testimony of the appellees that they and the appellant did agree that they were tired of

dealing with each other and would not enter into any other future agreements after the day of the quarrel mentioned above, this does not amount to a judicial admission which would defeat their right to recover from the appellant in this case. The Omohundro deal with Slick Oil Corporation, in March, 1956, should not be regarded as a "future involvement", because the Hughes lease was included in the original Humble farmout deal and the development of the Hughes lease was a part of the joint venture from its beginning.

"A fiduciary, however, cannot simply by terminating the relationship put himself in a position to acquire the property for himself which otherwise he would be under a duty to hold for his principal." 4 Scott on Trusts, p. 3227. The following quotation from Restatement of the Law, Restitution, paragraph 195, p. 801, is appropriate to the rule we think applicable to this case:

"A person holding as fiduciary a leasehold interest who in violation of his duty to the beneficiary obtains a renewal of the lease for himself, holds a new lease upon a constructive trust for the beneficiary.

"This rule applies where a fiduciary acquires for himself individually a different interest in same subject matter and goes further and says where a person holds a leasehold interest as fiduciary, he may or may not be under a duty to the beneficiary to renew the lease for beneficiary; but whether or not he is under such a duty, he cannot properly take a renewal for himself.

"The mere fact that the fiduciary relation is limited in duration to the duration of the lease, and that the lease is the sole subject matter of the relation, does not necessarily make it proper for fiduciary to secure for himself a renewal of the lease. Thus, where a lease is held by two joint ad-

venturers and one of them obtains a renewal of the lease for himself alone, he holds a new lease upon a constructive trust for himself and his co-adventurer, provided he was guilty of a breach of duty as fiduciary in securing a renewal of the lease."

There is no doubt that the appellant used the log of the drilling of one of the dry holes in securing his deal with Slick Oil Corporation. The knowledge and information provided by the log of that drilling operation was accumulated as a part of the joint venture of these three parties. The appellant showed this to agents of Slick Oil Corporation and partly because of what information it disclosed he was able to make his deal in the middle of March, 1956. The two appellees had no knowledge of his making the deal with Slick Oil Corporation until they discovered it later. The Hughes lease was allowed to terminate so far as Humble was concerned on March 24, 1956, and on March 28, 1956, four days later, Slick Oil Corporation acquired a lease on the same Hughes property and other property in the farmout and later granted to the appellant his one-sixteenth override because of the information supplied Slick Oil Corporation previously, and because he had produced the information concerning the availability of the area, according to the testimony of an official of Slick Oil Corporation. These activities on the part of the appellant amounted to a breach of the duty he owed his two joint adventurers. We think the appellant's contentions that the joint venture had been terminated before he began dealing with Slick Oil Corporation are without merit and they are overruled.

Under his third group of points, Nos. 10 through 24, the appellant says that the proof did not establish the agreement under which the appellees claimed and did not establish that said agreement was still in effect when he acquired his overriding royalty, and says that the overwhelming preponderance of the evidence establishes

that there were separate agreements with respect to each well promoted by the parties. Under these points the appellant argues that the evidence does not clearly establish the agreement to enter jointly into an effort to develop Humble's farmout lands. We think the evidence established that there was a joint venture and that the parties acted thereunder. The argument of the appellant was probably made to the jury on the trial of the case with an unfavorable result. The jury decided to accept as true the testimony of the appellees. These points present purely fact arguments and we are unable to agree that the evidence was conclusive or overwhelmingly in favor of the appellant's view of the facts. We do not find any error presented by these points and they are overruled.

Appellant's next group of points, 25 through 29, present the argument of the appellant that the appellees should not be permitted to recover, because they seek equitable relief and do not come into court with clean hands. The evidence was that appellee Matthews was formerly employed by Houston Oil Company and American Republics Corporation, oil companies owning and operating for oil production land in the area in Jasper County where the appellant and appellee instituted their joint venture. Sinclair Oil Company bought out American Republics Corporation and Matthews was still employed by Sinclair. Sam Sims of Slick Oil Corporation, the man with whom appellant made his deal for the override, was Chief Geologist with the American Republics Corporation until January, 1955. Matthews used the knowledge he acquired while working for American Republics in informing the appellant that he thought the land in that area had possibilities for oil production. Thompson testified that he had been employed by American Republics for three years, until January, 1955, and admitted that in doing his geological work to promote the Sharp and Owen wells (the two dry holes promoted by the joint venture) he used information from

the files of his new employer, Gulf Coast Lease Holds. The appellant says that the actions of the appellees was misconduct of the most serious nature, that the court can take judicial knowledge of the fact that shooting data is confidential information in the oil business. The appellant had requested of the trial court special issues to be submitted to the jury, inquiring whether Matthews used confidential information belonging to others in the performance of his geological service under the agreement between the parties, whether he did so without the consent of the true owner of such information. The appellant also requested similar issues in regard to the appellee Thompson. Appellees point out in reply to the contentions on the part of the appellant that there is no evidence in the record showing or tending to show that the appellee Thompson used any confidential information belonging to others, or that he did so without the consent of the owner of such information. There is no evidence that Thompson's present employer had any objection to Thompson's activities in the joint venture, and the evidence was that Thompson's employment with American Republics ended in 1955. There is evidence in the record that American Republics Corporation had as its policy that no employees were to be allowed to use any company information for personal gain or profit. This evidence, however, is expressly limited as being the policy of the company prior to January 25, 1955, the date Sims left the employment of that company, and several months prior to the date of the original joint venture agreement of the parties in April, 1955. The evidence also shows that prior to April, 1955, the American Republics Corporation had ceased to exist. In view of this state of the evidence, we do not believe that the trial court erred in refusing to submit the special issues requested by the appellant. There was nothing in the evidence to show that the information which these appellees acquired and used was forbidden to them at the time they made use of it.

Even if the conduct of the appellees in using information about oil prospects in Jasper County was wrongful, and we do not judicially know that it is, still we doubt that the appellant is in position to complain. In Vol. 2 of Pomeroy's Equity Jurisprudence (5th Edition) page 99, it is said:

"The party to a suit complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he, himself, has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party."

We believe that these points present no error and they are overruled.

■■■ Under the appellant's last group of points, Nos. 30 through 35, he contends that appellees did not prove nor obtain a jury finding of appellant's bad faith any time, and says that judgment should at least be limited to one or the other of the appellees and then to the Hughes lease only.

The reply of the appellees to these contentions of the appellant is appropriate and convincing. We adopt it largely as our discussion of the propositions advanced by appellant.

The issue of bad faith is conclusively shown by the findings of the jury to the effect that while the joint adventure existed between the parties in respect to the area described in the Humble farmout letter, the appellant violated his duty to his co-adventurers in wrongfully acquiring the interest from Slick Oil Corporation. Appellant's objection to the failure of the Court to submit any issue to the jury on the question of bad faith was not accompanied by the submission of a proper issue.

There is no evidence upon which appellees' recovery could be limited to Matthews, recovering his one-third, or Thompson recovering his one-third, or for both not to recover. All of the leases taken by Slick Oil Corporation were described in the Humble farmout letter and constituted a part of the area which the joint adventure originally sought to develop. This conclusively shows that the appellant abandoned none of the leases which he used in the Slick deal, as far as the joint adventure was concerned, for the simple reason that while the joint adventure existed, as found by the jury, such leases were a part of his deal with Slick. The consideration received by Slick was the property of the joint venture. Intention to abandon gives him no solace because the fact that appellant placed himself in a position to, and did, use the leases in the Slick Oil Corporation deal while the joint adventure existed, precludes the omission of any of the leases in the Slick Oil Corporation deal from appellees' right to have a constructive trust thereon since all of those leases, as stated above, were specifically described in the Humble farmout letter.

In the case of Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, by the Supreme Court, such court held in effect that Bolin having obtained geological information in the drilling done on the Howard leases while acting in a fiduciary relationship to the petitioners, which partly induced him to purchase the farmout leases and to obtain the renewal of the Howard leases for his personal profit, was a question of fact which petitioners had a right to have passed on, and the Supreme Court overruled the Court of Civil Appeals, 261 S.W.2d 352, which court had affirmed a summary judgment granted by the district court. Mr. Justice Smith writing the majority opinion had this to say about the case of Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, and since in our case it is uncontradicted that the appellant un-

dertook in a large measure to manage the affairs of the partnership enterprise, it is particularly appropriate here. The opinion on page 96 of 271 S.W.2d reads:

"In the case of Meinhard v. Salmon, supra, Salmon negotiated and obtained for himself a new lease on certain property which had been under lease by Salmon and Meinhard operating under a joint venture agreement. Salmon was the sole manager of the property. The new lease included some adjoining property not included in the original lease. The court sustained Meinhard's suit to establish his interest in the property, both the original and the adjoining property, on the theory of a constructed trust for his benefit. The court, in an opinion by Chief Justice Cardozo, said (249 N.Y. 458, 164 N. E. 546):

"'Joint adventurers, like copartners, owe to one another while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honestly alone, but the punctilio of an honor of the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.'"

The Supreme Court in the case of Mac-Donald v. Follett, 142 Tex. 616, 180 S.W. 2d 334, 337, recites with approval in its opinion Pomeroy's Equity Jurisprudence, 4th Edition, Vol. 3, Sec. 1050 (found in 5th Edition, Vol. 4, p. 108) and states, after referring to the text:

"* * * will be found a very careful statement of the law, with citation of many authorities, on the question of renewal of leases by partners and other fiduciary persons. After announcing the general rule that one member of a partnership cannot, during the existence of a lease, take a renewal thereof for his own benefit to the exclusion of his fellows, but that a lease so taken inures to the benefit of the whole firm, it is stated that the rule is: '* * * a particular application of a broad principle of equity, extending to all actual and quasi trustees, that a trustee, a person clothed with fiduciary character, shall not be permitted to use his position or functions so as to obtain for himself any advantage or profit inconsistent with his supreme duty to his beneficiary.' That rule is sound and we heartily subscribe thereto."

As has been clearly shown, the interest the appellant acquired was in property within the purpose and scope of the joint venture, but appellees' judgment would be correct even if it were not true that all of the interests which the appellant acquired individually were within the contemplation of the parties, under the rule laid down in Whatley v. Cato Oil Co., Tex. Civ.App., 115 S.W.2d 1205, 1209. Also Pomeroy's Equity Jurisprudence, 5th Edition, Vol. 4, page 108, Sec. 1050.

We believe that the various points of the appellant present no error, and that the judgment of the trial court should be affirmed.

Affirmed.