Lawrence TREUIL, Appellant

v.

Monica TREUIL, Appellee.

No. 09–09–00201–CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 29, 2009.

Decided April 8, 2010.

Sonya B. Coffman, The Coffman Law Firm, Beaumont, for appellant.

Michael R. Walzel, Walzel Law Firm, PLLC, Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This case arises from Lawrence Treuil's failure to pay Monica Treuil her portion of retirement benefits upon his receipt of them, as required by the parties' divorce decree. The central issue in this appeal is whether Monica's claim is barred by the statute of limitations.

## I. BACKGROUND

When Monica and Lawrence divorced in 1982, the trial court awarded Monica a portion of Lawrence's retirement benefits. On January 1, 2002, approximately twenty years after their divorce, Lawrence took a lump sum distribution upon his retirement. On September 26, 2007, Monica filed a petition to enforce the decree. She asked the court to enforce the decree and to award her a judgment based upon the percentage of the retirement fund the trial court had awarded to her under the parties' divorce decree. Lawrence answered Monica's petition for enforcement, and in his answer, he asserted that the statute of limitations barred Monica's claim. To avoid Lawrence's limitation defense, Monica amended her petition. In her amended pleading, she asserted that the discovery rule and the doctrine of fraudulent concealment allowed her to avoid Lawrence's statute of limitations defense. In a nonjury proceeding, the trial court found in Monica's favor and awarded her $39,924.25, together with prejudgment and post-judgment interest.

Assuming the discovery accrual rule applies, we hold that Monica's discovery of her injury, not the discovery of all of the other elements of her claim, started the clock on the date limitations began to run on her claim. We further hold that there is no evidence in the record before us to support the trial court's implied findings that less than four years passed between the date Monica discovered her injury and the date she filed suit. Accordingly, we conclude that neither the "discovery rule" nor the doctrine of "fraudulent concealment" allow Monica to avoid Lawrence's statute of limitations defense.

## II. ISSUES

On appeal, Lawrence raises three issues.

- Issue one contends that Monica's breach of fiduciary duty and breach of contract claims are barred by the relevant statutes of limitation.
- Issue two asserts that the discovery rule and the doctrine of fraudulent concealment do not rescue Monica's claims from Lawrence's limitations defense.
- Issue three argues that the trial court used the wrong date in calculating its award for prejudgment interest.

## III. LIMITATIONS AND TOLLING

### A. *Two or Four Year Limitations Period?*

Generally under the Family Code, the filing deadline for suits to enforce a division made by the trial court regarding property not in existence at the time of the original decree is two years from the date the right to the property matures or accrues. TEX. FAM.CODE ANN. § 9.003(b) (Vernon 2006). Both in the trial court and on appeal, Lawrence asserts that the two-year period provided in section 9.003(b) of the Family Code bars Monica's claims.

Monica argues that the Family Code's two-year limitations period does not apply to her claims. Instead, she asserts that we should look at the substance of her petition and ignore its title: "Petition for Enforcement of Property Division." According to Monica, examining the substance of the claims in her petition reveals that they involve "independent breach of contract and breach of fiduciary duty tort claims," each of which is governed by a four-year limitations period. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(5) (Vernon 2002), § 16.051 (Vernon 2008).

To resolve the parties' dispute in this case, it is not necessary that we resolve whether the two-year limitations period provided by the Family Code or the four-year limitations period provided by the Civil Practice and Remedies Code apply to Monica's theories of recovery. We assume without deciding that the four-year limitation period applies.

 Absent a basis to defer the running of the clock for purposes of statutes of limitation, limitations generally begin to run when the wrongful act causes an injury. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998). Monica was injured in this case when Lawrence did not comply with the terms of the divorce decree. The parties' 1982 divorce decree required Lawrence to remit to Monica "her proportionate share of said funds at her residence immediately upon receipt of said funds, if, as, and when received." Thus, we conclude that Monica's injury occurred in January 2002, when Lawrence withdrew all of the funds from the retirement account and upon doing so then failed to immediately remit Monica's portion to her. *See In the Marriage of Reinauer*, 946 S.W.2d 853, 860 (Tex.App.-Amarillo 1997, pet. denied).

When an accrual rule defers the date that the limitations period begins running, the issue becomes when did Monica learn that Lawrence had not remitted retirement funds owed to her. *See Childs*, 974 S.W.2d at 37. Under the facts of this case, resolving when Monica had actual or constructive knowledge of Lawrence's failure to remit the funds to her also resolves the issue that is necessary to determine the outcome of this appeal.

### B. *Does Monica's Knowledge Matter?*

 "The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). In *Willis*, after noting the difficulty

that a layman would have in perceiving an injury caused by one's own attorney, and given the fiduciary relationship between an attorney and his client, the Texas Supreme Court held that the discovery rule applied to legal malpractice cases. *Id.* at 645–46.

The Texas Supreme Court has also applied the discovery rule in other types of cases as well, including certain medical malpractice cases, cases involving a defendant's making a false credit report, and cases involving fraud.[1] On the other hand, the Texas Supreme Court has specifically stated:

> [W]e have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes. *See S.V. [v. R.V.,* 933 S.W.2d 1, 25 (Tex.1996)] (noting that applications of the discovery rule "should be few and narrowly drawn"); *Computer Assocs. [Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456, 457 (Tex.1996)] (noting that discovery rule is "a very limited exception to statutes of limitations" that applies "in certain limited circumstances").

*Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 313 (Tex.2006) (concluding that discovery rule did not apply to a breach of contract claim that involved a failure to procure the agreed upon insurance coverages); *see also Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 733, 736–37 (Tex.2001) (rejecting the application of the discovery rule to a claim by oil and gas royalty owners against their lease operator involving alleged underpayment of royalties); *Little v. Smith,* 943 S.W.2d 414, 422 (Tex. 1997) (rejecting discovery rule to claims

against an executor, administrator, or heir for failure to seek out or find an adopted child).

■■■ Whether the discovery rule applies in the first instance depends in part upon whether the injury is inherently undiscoverable; meaning, depending on the injury, the injury is unlikely to be discovered within the legislatively proscribed limitations period even when the claimant has exercised due diligence. *Horwood,* 58 S.W.3d at 734–35. When it applies, the discovery rule defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the "wrongfully caused injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 749 (Tex.1999). Nonetheless, the discovery rule is a limited exception to the statutes of limitation and applies only "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Horwood,* 58 S.W.3d at 734.

■■■ Because Monica sought to benefit from the discovery rule, she had the burden to prove the nature of her injury— Lawrence's failure to pay her under the divorce decree—was inherently undiscoverable. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988). Although the parties dispute whether Monica's injury was inherently undiscoverable, we need not reach that question. *See Horwood,* 58 S.W.3d at 734–37 (discussing the criteria courts consider in deciding whether something is "inherently undiscoverable"). Regardless of whether we classify

---

1. *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex. 1976) (case involving the filing of a false credit report); *Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972) (case involving negligent vasectomy operation); *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (case involving negligence of a surgeon leaving a foreign object in a patient's body); *Quinn v. Press,* 135 Tex. 60,

140 S.W.2d 438, 440 (1940) (case involving fraud), *superceded on other grounds Williams v. Khalaf,* 802 S.W.2d 651, 657 (Tex.1990) (noting that two-year limitations period applied in *Quinn* had been superceded by a statute in which the Legislature made a four-year limitations period applicable to claims alleging fraud).

an asset category, such as retirement accounts, as inherently undiscoverable assets, limitations, nevertheless, begins to run when a party possesses actual or constructive knowledge that an injury has occurred. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003).

■■■ Even in cases to which the discovery rule has been applied, the general rule is that "a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Id.* at 221–23 (discussing the accrual of a cause of action in the context of a claimant's discovery of his insurer's denial of his disability claim). Thus, in cases applying the discovery accrual rule, limitations begins to run at the point a claimant has actual or constructive knowledge of facts that would put a reasonable person on notice that he has suffered an injury. *See Rotella v. Wood,* 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) ("But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").

Since Monica did not file her suit until September 26, 2007, Monica had the burden of pleading and proving that her claims did not accrue by operation of the discovery rule, or that the limitations period were tolled by operation of the doctrine of fraudulent concealment, through at least September 25, 2003.[2] In other words, if Monica had actual or constructive knowledge that Lawrence received retirement distributions on or before September 25, 2003, Monica would have failed to meet her burden of demonstrating at trial that her claim accrued within the four-year period before she filed her petition on September 26, 2007. *See Woods,* 769 S.W.2d at 518 (explaining that the party who seeks to benefit from discovery rule bears the burden of pleading and proof); *Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex.1977) (explaining that fraudulent concealment is an affirmative defense to limitations and therefore, the burden of proof is placed on the claimant).

## IV. STANDARD OF REVIEW

Because neither party requested findings of fact or conclusions of law, we must deem that the omitted findings were made by the trial court in a manner that supports the trial court's judgment. TEX.R. CIV. P. 279 (providing omitted elements of a claim "shall be deemed found by the court in such manner as to support the judgment"); *Tri v. J.T.T.,* 162 S.W.3d 552, 558 (Tex.2005). In this case, the trial court's judgment recites findings in Monica's favor on her breach of contract and her breach of fiduciary duty theories. Additionally, in her amended petition, Monica specifically pled that the discovery rule

**2.** As it is not necessary that we do so, we expressly do not resolve whether the two or four-year limitations period applies to the parties' dispute. We assume without deciding that the four-year statute applies to Monica's claims. However, we note that there was no written contract or oral agreement between the parties regarding the requirement in the divorce decree that obligated Lawrence to remit a portion of his retirement funds to Monica when he received them. Further, we expressly do not consider whether a court can or should carve exceptions to the statutory limitations period established by the Legislature in the Family Code for claims involving property previously awarded in a divorce decree. *Compare Morales v. Morales,* 195 S.W.3d 188, 191–92 (Tex.App.-San Antonio 2006, pet. denied), *with Jenkins v. Jenkins,* 991 S.W.2d 440, 445–46 & n. 6 (Tex.App.-Fort Worth 1999, pet. denied). While noting our reservations about these issues, resolving them is not required to resolve the issues presented in this appeal.

and the doctrine of fraudulent concealment applied to her claim against Lawrence. In light of the date that Lawrence withdrew funds from his account in January 2002, and the date that Monica initially filed her petition in September 2007, the trial court must have applied the discovery rule or the doctrine of fraudulent concealment to defer the date upon which Monica's claim arose and it must have determined that Monica's claim accrued on or after September 26, 2003. *See* Tex.R. Civ. P. 279.

With respect to issues one and two, Lawrence argues that he proved as a matter of law the date that Monica discovered or should have discovered Lawrence's retirement and his receipt of the retirement funds in issue. Lawrence specifically asserts that "it is uncontroverted anywhere in the record that Amber, the Parties' truthful daughter, told Monica in 2002 that [Lawrence withdrew his retirement benefits and started a business.]" In addition, Lawrence requests that we render judgment in his favor but did not pray that we remand for a new trial on Monica's breach of contract and breach of fiduciary duty theories. Therefore, we construe Lawrence's argument as challenging the legal sufficiency of the evidence to support the trial court's judgment.

When, as here, a party challenges the legal sufficiency of evidence supporting an adverse finding on an issue in which he did not have the burden of proof, he must demonstrate on appeal that no evidence supports the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be sustained when " '(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the

evidence conclusively establishes the opposite of the vital fact.' " *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We sustain legal sufficiency challenges "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (other citations omitted)).

To resolve the issues before us, we review the record to determine if any evidence supports the trial court's application of either the discovery rule or the doctrine of fraudulent concealment to delay the accrual date of Monica's claim for a sufficient time-period to allow the trial court to reasonably conclude that Monica timely filed her claim. We also evaluate whether the nature of Monica's breach of fiduciary duty claim itself provided a basis for the trial court to apply the discovery rule to allow Monica to timely file her claim.

## V. REVIEW OF THE EVIDENCE

### A. *When did Monica possess constructive knowledge of her injury?*

■ Essentially, Monica argues that she did not know that Lawrence had received retirement funds because he failed to notify her upon his retirement that he had withdrawn all of his funds from his retirement account. When the defendant's

failure to notify is the basis of the plaintiff's tolling claim, "a plaintiff knows or should have known of the failure to notify when [the plaintiff] knows or should have known the facts about which [the plaintiff] was to be notified." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

■ In this case, the parties disagree about whether Monica produced any evidence to prove that she was not on actual or constructive notice of Lawrence's withdrawal of funds from his retirement account. Lawrence contends that Monica had sufficient facts to put her on notice of his withdrawal of retirement funds more than four years before she filed her initial petition. Lawrence relies on what he argues is the uncontroverted testimony of the parties' daughter, Amber. Amber testified that in 2002, she told Monica that Lawrence had retired and that he had opened a business funded "primarily by cash from his retirement."

According to Monica, she first decided to inquire about the status of Lawrence's retirement benefits around August 2007, after the birth of a grandchild. Monica testified that at that point, she had no information concerning whether or not the money had been withdrawn from the account. Monica explained that she called Lawrence's former employer who informed her that no account had been established separately for her, but that a lump-sum check had issued in January 2002 from her ex-husband's account. Monica argues that this evidence, together with the fact that Amber did not recall how Monica reacted to the information she gave her in 2002, allowed the trial judge to determine that Monica's discovery of the withdrawal of funds occurred in 2007, a period well within the four-year limitations statutes she asserts applies to her claim.

Importantly, the record in this case reflects that Monica never testified that Amber's account of the 2002 conversation did not occur, nor did Monica testify that Amber's recollection about the details of the 2002 conversation were inaccurate.

■ A finder of fact cannot "ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller*, 168 S.W.3d at 820. On this record, Amber's testimony could have been readily controverted, is otherwise credible, and is free from contradictions and inconsistencies. In direct contrast, Monica, after being recalled as a witness, specifically disputed Lawrence's testimony concerning his assertion that he told her in late 2001 that he intended to withdraw money from his retirement account and start a business. Thus, the trial court could have reasonably rejected Lawrence's testimony about the subject-matter of the 2001 conversation that Lawrence claimed he had with Monica. *See City of Keller*, 168 S.W.3d at 811.

However, as previously stated, Amber's testimony about her conversation with Monica was not controverted. Monica was not recalled as a witness to rebut Amber's testimony about her conversation with her, even though the court apparently left the record open for another sixteen months before rendering its decision. Further, based on our review of the record, Amber's testimony does not indicate that she had any interest in the outcome of the dispute between her parents or that she favored either of the parties. Her testimony about the conversation with Monica is clear and positive, and as Monica was the other party to the 2002 conversation, it is the type of evidence that Monica could have easily controverted.

■ Amber's testimony shows that in 2002, Monica had notice of facts from which, upon further reasonable inquiry, Monica would have discovered that Lawrence had withdrawn funds from his retirement account. As explained by *City of Keller,* an appellate court conducting a legal sufficiency review cannot " 'disregard undisputed evidence that allows of only one logical inference.' " 168 S.W.3d at 814 (quoting *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 519–520 (Tex.2002)). A reasonable person, acting with the information that Amber related about Lawrence's withdrawal of retirement funds and with the knowledge of the terms of the decree, possessed constructive knowledge that Lawrence had breached the terms of the parties' divorce decree.

We hold that Monica was on notice of her injury when she learned from Amber that Lawrence had withdrawn retirement funds from his account. Even when the discovery rule applies, the discovery of the injury, not the discovery of all of the elements of a claim, generally starts the clock. *See S.V.,* 933 S.W.2d at 4. Thus, regardless of whether Monica completely appreciated the scope of her injury in 2002, it is the discovery of the injury that matters. *See id.* While Monica may have actually learned in 2007, from Lawrence's former employer, that he had withdrawn all of the funds in his account, Monica was on notice of facts that gave her constructive notice of her injury in 2002.

In summary, there is no evidence in this record to support Monica's claim that she filed suit within four years of the date her cause of action accrued under the discovery accrual rule. *See Suberu,* 216 S.W.3d at 793; *City of Keller,* 168 S.W.3d at 827. Amber's clear, positive, direct, and uncontradicted testimony established that Monica had constructive notice of her injury in excess of four years before filing her initial petition. Under the testimony in this record, we conclude as a matter of law that the discovery rule does not operate to delay the accrual of Monica's claim to avoid Lawrence's limitations defense.

### B. *Does Fraudulent Concealment Save Monica's Claim?*

■ Monica further contends that the doctrine of fraudulent concealment excused her failure to timely file her suit. As with the discovery rule, Monica had the burden to establish that the doctrine applied to her claims. *See Weaver,* 561 S.W.2d at 793.

■ Monica does not contend and did not testify that Lawrence falsely represented that he had not retired or that he had not received any funds from his retirement account. Instead, Monica claims Lawrence failed to notify her that he had withdrawn and spent Monica's portion of the funds awarded to her in the 1982 decree. "[S]ilence may be equivalent to a false representation only when particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001). Whether such a duty exists is a question of law. *Id.*

■ Generally, the law imposes duties of disclosing material facts when they would not be discoverable by the exercise of ordinary care and diligence in certain transactions or when a reasonable investigation would not uncover the facts. *See Smith v. Nat'l Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979); *Pairett v. Gutierrez,* 969 S.W.2d 512, 515 (Tex. App.-Austin 1998, pet. denied). "Ordinary care" is usually defined as the degree of care that would be used by persons of ordinary prudence under the same or similar circumstances. *See Dickson v. J. Weingarten, Inc.,* 498 S.W.2d 388, 391 (Tex.Civ.App.-Houston [14th Dist.] 1973,

no writ). "Reasonable inquiry means the amount of examination that is reasonable under the circumstances of the case." *Monroe v. Grider,* 884 S.W.2d 811, 817 (Tex.App.-Dallas 1994, writ denied).

Nevertheless, even if we assume that a duty of disclosure regarding the receipt of retirement benefits arose under the terms of the parties' divorce decree, the tolling effect of Lawrence's non-disclosure about his receipt of the retirement funds ended when Monica learned that Lawrence did not pay her in a manner consistent with the obligations imposed by the decree. *See KPMG Peat Marwick,* 988 S.W.2d at 750 (when a defendant fraudulently conceals facts, limitations begin to run on the date the "claimant, using reasonable diligence, discovered or should have discovered the injury"). "Fraudulent concealment will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence." *Kerlin v. Sauceda,* 263 S.W.3d 920, 925 (Tex.2008).

We have already explained the effect of Amber's uncontroverted testimony on Monica's claim that the discovery rule defers the accrual date for her claims. For the same reasons, we conclude that the doctrine of fraudulent concealment does not delay the date that limitations began on Monica's claim for a sufficient period for her to effectively avoid Lawrence's limitations defense.

### C. *Does a Breach of Fiduciary Duty Change the Result?*

The trial court's judgment recites that the trial court found in Monica's favor on her breach of fiduciary duty claim. A fiduciary's conduct can be inherently undiscoverable when the "person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's ac-

tions or unaware of the need to do so." *S.V.,* 933 S.W.2d at 8. However, even if "a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *Id.*

Thus, even if a fiduciary duty was imposed on Lawrence based upon the language of the divorce decree, an issue we need not decide, Amber's 2002 conversation with Monica placed her on notice of sufficient facts of Lawrence's misconduct that a reasonably prudent person, acting in her own interest, could not have ignored Lawrence's failure to remit funds from the retirement distribution when he received them. *See id.* At the point Lawrence's misconduct became apparent, the law imposed a duty on Monica to make a reasonable inquiry into the status of Lawrence's failure to pay her a portion of the funds he received. *See Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983) ("Knowledge of such facts is in law equivalent to knowledge of the cause of action.").

According to Monica, she waited until 2007 before seeking further information about Lawrence's withdrawal of retirement funds. Nevertheless, the evidence showed that she was on notice of facts related to Lawrence's failure to remit to her a share of the funds he withdrew from his retirement account in 2002, even if she may not have known that he had withdrawn all of the funds at that time.

We conclude that Lawrence's misconduct was apparent in 2002. On this record, we hold that there is no evidence to support the trial court's determination that the four-year limitations period did not bar Monica's claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (providing four-

year limitations period for breach of fiduciary duty claims).

## VI. CONCLUSION

 We hold that Monica failed to produce evidence, even a scintilla, to carry her burden to show that the discovery rule or the doctrine of fraudulent concealment tolled her filing period for a sufficient period to make her suit, filed in September 2007, timely under the applicable limitations statutes. We further hold that Monica's claim is barred by the four-year limitations period provided for breach of fiduciary duty claims. Therefore, we sustain Lawrence's first two issues.[3] "The fact that a meritorious claim might thereby be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations." *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977). The trial court's judgment is reversed and we render judgment that Monica recovers nothing.

REVERSED AND RENDERED.

DAVID GAULTNEY, Justice, dissenting.

The divorce judgment ordered Lawrence to pay Monica her share of the retirement funds. The judgment also made Lawrence a trustee of her funds. The trustee designation provided Monica additional protection in the event Lawrence ignored or simply forgot the order to pay her share. When he received her share, Lawrence held Monica's property as trustee under the terms of the divorce judgment. The discovery rule applies when a trustee asserts that a claim against him is barred by limitations. *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197, 204–05 (1957).

I respectfully disagree with the majority opinion on three grounds: the proper application of the legal sufficiency standard of review to the record in this case; the nature of a trust; and the proper application of the discovery rule to a trustee. Because Monica's claim is not barred by the four year statute of limitations, we should affirm the trial court's judgment.

THE LEGAL SUFFICIENCY STANDARD OF REVIEW

We are governed in our review of this case by the specific challenge Lawrence makes on appeal. The majority construes Lawrence's argument as challenging the legal insufficiency of the evidence. I agree that is the substance of his challenge. *See City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005).

Monica testified she discovered in 2007 that her money had been withdrawn in a lump sum. She asked Exxon–Mobil if an account had been established in her name, and was told "no." The record reflects she filed this lawsuit in 2007 within the four year statute of limitations. *See Peek v. Berry*, 143 Tex. 294, 184 S.W.2d 272, 275 (1944) (four year statute of limitations).

Lawrence testified differently and stated he informed Monica he was going to retire and use his retirement money to open a business. Amber, the daughter, testified that in a conversation with Amber and her husband, Monica was told Lawrence retired in 2002. Amber did not recall how or if Monica reacted at the time.

As the fact-finder in this bench trial, the trial judge was responsible for assessing the credibility of the witnesses and for resolving conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819–20. As an appellate court, we must presume that, in a case in which a fact-finder has conflicting

3. In view of our resolution of issues one and two, we need not consider issue three.

evidence to resolve, the fact-finder resolved all conflicts in favor of the prevailing party. As a reviewing court, we are not free to resolve the conflicts in testimony differently from the fact-finder. We disregard the conflicting evidence in reviewing the legal sufficiency of the evidence. *See id.* at 821. As trier of fact, the trial judge may "disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *Id.* at 820 (footnote omitted). To the extent Monica's testimony conflicts with Amber's or Lawrence's, the trial court accepted the testimony of Monica and rejected theirs. So must this Court under the applicable standard of review. The evidence is legally sufficient to support the trial court's judgment.

## THE NATURE OF A TRUST

Even if this Court had the ability to decide Lawrence and Amber testified truthfully and Monica did not, that determination would not change the result in this case, because of the nature of a trust and the duty of full disclosure. Lawrence took control of Monica's property in 2002. His role then was as trustee of the money; any money he did not immediately pay Monica was held in trust for her. A trustee has a duty to administer the trust solely in the interest of the beneficiary for as long as the trustee remains trustee. *See Ames v. Ames,* 757 S.W.2d 468, 476 (Tex.App.-Beaumont 1988), *aff'd as modified,* 776 S.W.2d 154 (Tex.1989). Lawrence did not notify Monica of a repudiation of the trust. Even if the trial court had to accept his testimony as true—an assumption the majority rejects, as do I— Lawrence's statement to Monica that he intended to use his retirement funds to start a business did not tell her what he intended to do with her money. A trustee must fully disclose all material facts known to him that might affect the beneficiary's rights. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 313 (Tex.1984). Lawrence may have intended to leave Monica's funds in the account. Generally then, the termination of the trustee relationship required a mutual abandonment or agreement between the parties, also with full disclosure. *See generally Omohundro v. Matthews,* 317 S.W.2d 771, 777 (Tex.Civ.App.-Beaumont 1958), *aff'd,* 161 Tex. 367, 341 S.W.2d 401 (1960). Without a termination of the trust relationship, Lawrence continued as trustee until he lost all of her money. Lawrence testified the money was not exhausted from the account in which he initially deposited the funds until 2003. By that year, he had invested all Monica's funds in his business. The business in which he invested the funds was not closed until 2004, after he moved to the Virgin Islands. When a trustee commingles trust property with his own, as happened here, the commingled funds become the property of the trust, unless the trustee is able to distinguish and separate that which is his own. *See generally Eaton v. Husted,* 141 Tex. 349, 172 S.W.2d 493, 497–98 (1943). Essentially, trust funds can be traced and recovered. *See id.* Until 2004, Lawrence held Monica's property. This lawsuit was filed in 2007, within four years of the date all of her property held in trust finally disappeared. Therefore, even if the trial court was bound by the testimony of Lawrence or Amber, a suggestion I do not accept, this lawsuit would not be barred by limitations, because of the nature of a trust.

## THE APPLICATION OF THE DISCOVERY RULE

Finally, the discovery rule requires a repudiation of the trust by the trustee. *See Collins v. Griffith,* 125 S.W.2d 419, 425 (Tex.Civ.App.-Amarillo 1938, writ ref'd). A trustee owes a duty of full disclosure to the beneficiary. *Montgomery,* 669 S.W.2d

at 313–14. Because of the trustee's duty to fully disclose, the discovery rule is applied differently in a claim against a trustee. A beneficiary has no duty to investigate for wrong-doing by the trustee until she has actual notice of sufficient facts to cause further inquiry. *See id.; Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (1945). The actual notice requirement is applied strictly because the trustee is not allowed to benefit from his failure to fully disclose. It matters not that the trustee and beneficiary have a strained relationship. *See Montgomery*, 669 S.W.2d at 313. It matters not that the trustee retains or exercises control over the beneficiary's property, because that is generally what a trustee does. Regardless of the circumstances, the law provides that the beneficiary is entitled to rely on a trustee to fully disclose all relevant information. *See generally Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 788 (1938) (fiduciary and absolute duty to disclose). Because of the legal responsibilities the law imposes on a trustee, the beneficiary is entitled to presume that a trustee holding trust property does so as a trustee, "and the trust relation continues unless plainly repudiated...." *Gibbons v. Bell*, 1876 WL 9218, at *4, 45 Tex. 417 (1876); *see also Collins*, 125 S.W.2d at 425.

Under the common law, the statute of limitations generally does not begin to run on a claim against the trustee until the trustee repudiates the trust and notifies the beneficiary. *See Langford v. Shamburger*, 417 S.W.2d 438, 445 (Tex.Civ.App.-Fort Worth 1967, writ ref'd n.r.e.), *disapproved of on other grounds by Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 249–50 (Tex.2002); *Collins*, 125 S.W.2d at 425–26. The repudiation must be "plain, strong, and unequivocal ... open[,]" and "to be sufficient and effective must have been brought home to the beneficiary." *Langford*, 417 S.W.2d at 445.

The date a beneficiary learns the trustee has taken possession of trust property is not the date a claim against the trustee accrues, nor is it the date limitations begins to run. Only in exceptional circumstances should limitations run in favor of a silent trustee. Based on the evidence presented, the trial court could reasonably conclude Lawrence never gave "plain, strong and unequivocal" notice to Monica that he was repudiating the trust. *See id.* The statute of limitations does not bar her claim.

Based on the applicable standard of review, we should affirm the trial court's judgment. Because the majority does not, I respectfully dissent.