ACCEPTED
03-15-00008-CV
6111882
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/17/2015 11:06:21 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00008-CV**

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/20/2015 8:17:21 AM
JEFFREY D. KYLE
Clerk

**PAUL D. SIMMONS,**
**Appellant**

**V.**

**TERESA A. SIMMONS,**
**Appellee**

ON APPEAL FROM THE 119TH JUDICIAL DISTRICT COURT OF
OF TOM GREEN COUNTY, TEXAS
CAUSE NO. B-13-0232-F

**BRIEF OF APPELLANT**

Melvin Gray
State Bar Number 08328000
Gray & Brigman, PLLC
206 W. College Ave.
San Angelo, Texas 76903
Tel:  (325) 653-4594
Fax: (325) 657-0039
Email: sgreen@grayandbrigman.com

**Attorney on Appeal**
**for Appellant**

**ORAL ARGUMENT REQUESTED**

**No. 03-15-00008-CV**

---

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS

---

**PAUL D. SIMMONS,**
**Appellant**

**V.**

**TERESA A. SIMMONS,**
**Appellee**

---

ON APPEAL FROM THE 119TH JUDICIAL DISTRICT COURT OF
OF TOM GREEN COUNTY, TEXAS
CAUSE NO. B-13-0232-F

---

**BRIEF OF APPELLANT**

---

TO THE HONORABLE COURT OF APPEALS:

Appellant Paul D. Simmons respectfully files this Brief.

## Identity of Parties and Counsel

The following is a complete list of all parties, as well as the names and addresses, and emails (if known) of all counsel.

| | |
|---|---|
| **Petitioner/Appellee:** | Teresa A. Simmons |
| **Respondent/Appellant:** | Paul D. Simmons |
| **Counsel for Petitioner/Appellee at Trial and on Appeal:** | Kirk Hawkins<br>Attorney at Law<br>224 West Beauregard<br>Ste. 303<br>San Angelo, Texas 76903 |
| **Counsel for Respondent/ Appellant at Trial and on Appeal:** | Melvin Gray<br>Gray & Brigman, PLLC<br>206 W. College Ave.<br>San Angelo, Texas 76903<br>sgreen@grayandbrigman.com |
| **Trial Court:** | The Honorable Ben Woodward<br>119th Judicial District Court<br>Tom Green County, Texas |

## Record References

The Clerk's Record includes all of the relevant pleadings and orders filed with the trial court and clerk. The Clerk's Record contains one volume. References in this Brief to the Clerk's Record are by volume and page number, indicated as "CR 1:__."

The Reporter's Record includes the transcript of the bench trial held on July 22, 2014. The Reporter's Record contains three volumes. References to the Reporter's Record are by volume and page number, indicated as "RR __:__."

The Reporter's Record also includes all of the parties' exhibits submitted to the trial court and admitted into evidence during the bench trial. Copies of all such exhibits are included in Volume 3 of the Reporter's Record; therefore, references to the parties' exhibits are indicated as "RR 3:PX#__" or "RR 3:RX#__."

References to the trial court's Findings of Fact are indicated as "FF#__." References to the trial court's Conclusions of Law are indicated as "CL#__."

## Party References

Paul D. Simmons, Appellant, shall be referred to as "Paul." Teresa A. Simmons, Appellee, shall be referred to as "Teresa."

## Request for Oral Argument

Pursuant to TEX. R. APP. P. 39, Simmons hereby requests oral argument.

# Table of Contents

**Identity of the Parties and Counsel** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**Record References** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**Party References** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**Request for Oral Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**Index of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

**Statement of the Case** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

**Issue Presented** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

> **Issue No. 1:** Teresa's enforcement action was subject to the applicable statute of limitations. Paul properly raised this defense in his pleadings and during the bench trial. Did the trial court abuse its discretion by enforcing the parties' 1987 divorce decree and awarding Teresa $51,635.60 when her enforcement action was barred by this affirmative defense?

**Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

- ● The Parties' Marital History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- ● The Parties' Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
- ● The Division of Paul's Retirement Benefits . . . . . . . . . . . . . . . . . . . . 4
- ● Conoco's Payment of Paul's Retirement Benefits . . . . . . . . . . . . . . 5
- ● Teresa's Enforcement Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Summary of the Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Standards of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

●    Findings of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    ●    Legal Sufficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    ●    Factual Sufficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

●    Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
●    (Disputed) Trial Court's Findings of Fact and
       Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    ●    (Disputed) Findings of Fact . . . . . . . . . . . . . . . . . . . . . . . 12
    ●    (Disputed) Conclusions of Law . . . . . . . . . . . . . . . . . . . . 13

    ●    Abuse of Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Argument and Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    **Issues No. 1 Re-Stated** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    ●    Two-Year Statute of Limitations:
         Tex. Fam. Code § 9.003(b) . . . . . . . . . . . . . . . . . . . . . 15
    ●    Discovery Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        ●    Inherently Undiscoverable . . . . . . . . . . . . . . . . . . . . . 17
        ●    Pleading Requirement . . . . . . . . . . . . . . . . . . . . . . . . . 18
        ●    Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        ●    Reasonable Diligence . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    ●    Accrual of Teresa's Injury . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    ●    Inapplicability of Discovery Rule . . . . . . . . . . . . . . . . . . . . . 20

        ●    Waiver of Discovery Rule . . . . . . . . . . . . . . . . . . . . . . 20
        ●    No Inherently Undiscoverable Injury . . . . . . . . . . . . 22

            •    No Reasonable Diligence . . . . . . . . . . . . . . . . 23
            •    Teresa's Specialized Knowledge . . . . . . . . . . . 27

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Prayer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Certificate of Compliance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Certificate of Service** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Appendix** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

      **1.**     Judgement dated September 15, 2014.

      **2.**     Findings of Fact and Conclusions of Law dated October 22, 2014.

      **3.**     Decree of Dissolution of Marriage and Child Custody, Support and Property Settlement Agreement file-stamped June 1, 1987

# Index of Authorities

**Cases**

*Anderson v. City of Seven Points*, 806 S.W.2d 791 (Tex. 1991) . . . . . . . . . . . . . . 9

*Austin Indep. Sch. Dist. v. Lofters*, No. 03-14-00071-CV;
2015 TEX. APP. LEXIS 3115 (Tex. App.–Austin, Apr. 1, 2015,
pet. filed) (mem. op.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002) . . . . . 12

*Bates v. Tesar*, 81 S.W.3d 441 (Tex. App.–El Paso 2002, no pet.) . . . . . . . . . . . 11

*Cain v. Bain*, 709 S.W.2d 175 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cire v. Cummings*, 134 S.W.3d 835 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Austin v. Whittington*, 384 S.W.3d 766 (Tex. 2012) . . . . . . . . . . . . . . . . 11

*Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) . . . . . . . . 15

*Conoco, Inc. v. Amarillo Nat'l Bank*, 14 S.W.3d 325 (Tex. App.–Amarillo
2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985),
*cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986) . . . 14

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998) . . . . . . . . . . . . . . . 19

*Heritage Resources, Inc. v. Hill*, 104 S.W.3d 612 (Tex. App.–El Paso 2003,
no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Hitzelberger v. Samedon Oil Corp.*, 948 S.W.2d 497 (Tex. App.-Waco 1997,
writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

***In re Am. Nat'l Cnty Mut. Ins.* Co.**, 384 S.W.3d 429 (Tex. App.–Austin 2012, original proceeding) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

***In the Estate of Melchior***, 365 S.W.3d 794 (Tex. App.–San Antonio 2012, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

***In the Interest of M.W.***, 959 S.W.2d 661 (Tex. App.–Tyler 1997, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

***Leibman v. Grand****,* 981 S.W.2d 426 (Tex. App.-El Paso 1998, no pet.) . . . . 10-11

***Mayorga v. Mayorga***, No. 03-13-00787-CV; 2015 TEX. APP. LEXIS 4713 (Tex. App.–Austin, May 8, 2014, no pet.) (mem. op.) . . . . . . . . . . . . . . . 13

***Murray v. Murray***, 276 S.W.3d 128 (Tex. App.–Fort Worth 2008, pet. dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

***Ortiz v. Jones****,* 917 S.W.2d 770 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 11

***Pitman v. Lightfoot***, 937 S.W.2d 496 (Tex. App.–San Antonio 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

***Plas-Tex., Inc. v. U.S. Steel Corp.****,* 772 S.W.2d 442 (Tex. 1989) . . . . . . . . . . . 10

***Point Lookout West, Inc. v. Whorton***, 742 S.W.2d 277 (Tex. 1987) . . . . . . . . 10

***Proctor v. White***, 172 S.W.3d 649 (Tex. App.–Eastland 2005, no pet.) . . . . . . . 18

***Provident Life & Accident Ins. Co. v. Knott***, 128 S.W.3d 211 (Tex. 2003) . . . . 16

***Sixth RMA Partners, L.P. v. Sibley***, 111 S.W.3d 46 (Tex. 2003) . . . . . . . . . . . . 9

***Texas Health Presbyterian Hosp. Dallas v. Burch***, No. 05-14-00665-CV, 2015 TEX. APP. LEXIS 625 (Tex., Jan. 22, 2015) . . . . . . . . . . . . . . . . . . . . 17

***Tipton v. Brock***, 431 S.W.3d 673 (Tex. App.–El Paso 2014, pet. denied) . . . . . 19

*Treuil v. Treuil,* 311 S.W.3d 114 (Tex. App.–Beaumont 2010,
 no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18,19-20,23

*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328 (Tex. 1998),
 *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999) . . . 10

*Urbanczyk v. Urbanczyk*, No. 07-07-0077-CV; 2009 TEX. APP. LEXIS 587
 (Tex. App.–Amarillo, Jan. 29, 2009, no pet.) (mem. op.) . . . . . . . . . . . . . 24

*Wagner & Brown, Ltd v. Horwood*, 58 S.W.3d 732 (Tex. 2001) . . . . 16-17,19,27

*Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190
 (Tex. App.–Austin 1992, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515 (Tex. 1988) . . . . . . . . 18-21

**Statutes**

TEX. FAM. CODE ANN. § 9.003(b) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . 15

**Rules**

TEX. R. APP. P. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

# Statement of the Case

*Nature of the Case:*  This family law suit arose out of an enforcement action filed by Teresa seeking to enforce the parties' property division from a 1987 divorce. (CR 1:7-22,35-37).

*Course of Proceedings:*  On or about March 28, 2013, Teresa registered the parties' 1987 New Mexico divorce decree in Texas. (CR 1:7-22). On April 4, 2013, Teresa provided notice to Paul of the registration of a foreign decree. (CR 1:23-24). On or about April 22, 2013, Paul filed a response in which he contested such registration, asserted various affirmative defenses, and requested a hearing. (CR 1:25-26). On or about April 3, 2014, Teresa filed a Motion for Enforcement of Order seeking to enforce a specific provision of the parties' divorce decree pertaining to the division of Paul's retirement pension. (CR 1:35-37).

A bench trial was held on July 22, 2014. (RR 1: 1). At the conclusion of the bench trial, the trial court took the matter under consideration. (RR 2:30). On or about August 20, 2014, the trial court issued a letter ruling, and on September 15, 2014, the trial court entered a written judgment denying all of Paul's affirmative defenses, granting Teresa's request to enforce the specific property provision pertaining to Paul's retirement benefits, and awarding Teresa a total money judgment of $51,635.60. (CR 1:41,44-45) (Appendix 1).

On or about October 3, 2014, Paul timely requested that the trial court enter findings of fact and conclusions of law. (CR 1:51-52). On or about October 22, 2014, the trial court entered its written findings and conclusions. (CR 1:52-53) (Appendix 2). On or about December 12, 2014, Paul timely filed his Notice of Appeal. (CR 1:57-58).

*Trial Court:* The Honorable Ben Woodward, 119th Judicial District Court, Tom Green County, Texas.

*Trial Court Disposition:* Judgment dated September 15, 2014. (CR 1:44-45) (Appendix 1). The trial court's judgment awarded Teresa $48,757.60 in actual damages, $278.00 in court costs, and $2,600.00 in attorney's fees. (*Id*.).

*Parties:* **Petitioner/Appellee**: Teresa A. Simmons
**Respondent/Appellant**: Paul D. Simmons

# Issue Presented

**Issue No. 1:**  Teresa's enforcement action was subject to the applicable statute of limitations.  Paul properly raised this defense in his pleadings and during the bench trial.  Did the trial court abuse its discretion by enforcing the parties' 1987 divorce decree and awarding Teresa $51,635.60 when her enforcement action was barred by this affirmative defense?

## Statement of Facts

●     <u>The Parties' Marital History</u>.

Paul and Teresa were married on August 22, 1969. (RR 2:16). They were both nineteen years old when they got married. (RR 3:PX#5). During the course of their marriage, they had two children–a son and a daughter. (RR 2:18; 3:PX#5). After being married for approximately eighteen years, the couple decided to get divorced. (RR 2:16).

Paul and Teresa's divorce was final on June 1, 1987, and a written Decree of Dissolution of Marriage, (the "Divorce Decree"), was entered on that same day in Eddy County, New Mexico. (CR 1:8-10; RR 2:16; 3:PX#4; FF#1) (Appendices 2-3). At the time of the parties' divorce, their son was approximately fourteen or fifteen years old and their daughter was approximately nine or ten years old. (RR 2:18).

●     <u>The Parties' Settlement Agreement</u>.

Paul and Teresa resolved all issues pertaining to their divorce through the execution of a Child Custody, Support and Property Settlement Agreement, (the "Settlement Agreement"). (CR 1:11-21; RR 2:16-17; 3:PX#5) (Appendix 3). The Settlement Agreement was approved by the New Mexico trial court and properly incorporated into the Divorce Decree. (CR 1:8-10; RR 3:PX#4) (Appendix 3). Under the terms of the Settlement Agreement, Paul retained primary custody of the two

1

children during the school year, and Teresa had custody of the children during their summer vacation. (CR 1:12; RR 2:18; 3:PX#5) (Appendix 3).

As to child support, Paul agreed to pay Teresa $100.00 per month for every thirty days she had physical custody of the children. (CR 1:13; RR 3:PX#5) (Appendix 3). The parties also agreed that Teresa would not be required to pay any child support while she attended law school. (*Id*.). Additionally, the parties agreed that the New Mexico trial court would retain jurisdiction to modify the custody or child support provisions included in the Settlement Agreement once Teresa graduated from law school. (*Id*.).

It appears the parties never petitioned the trial court to modify these custody or child support provisions. Paul testified Teresa never paid him any child support and that he had provided the total support for the two children. (RR 2:11). In contrast, Teresa testified that their daughter came to live with her at around the age of fifteen years. (RR 2:20). She further testified that during the time the child was living with her, Paul maintained insurance on their daughter but provided no other financial support for the child during this time period. (*Id*.). It was undisputed that by the day of trial, both of the children were over twenty-one years of age. (RR 2:11).

Under the terms of the Settlement Agreement, Paul was also required to pay $100.00 each month towards Teresa's credit card purchases for gas and automobile

maintenance for a period of eighteen months, that is, until December 31, 1988. (*Id.*).

Regarding the division of the parties' property, Teresa testified that the only property she actually got out of the divorce was a car, her clothing, jewelry, and some patio furniture. (RR 2:19). Teresa testified that she basically "left" Paul all the property, including her "grandmother's dishes." (*Id.*). Her trial testimony in this regard was misleading, if not entirely false.

A careful review of the terms of the Settlement Agreement reveals Teresa was awarded a substantial amount of the parties' community property, including but not limited to, the following: two cars, jewelry, a computer, two beds, two desks, a stereo, two guns, lamps, a dining table and four chairs, a TV, a microwave, and patio furniture. (CR 1:14; RR 3:PX#5) (Appendix 3). Additionally, under the terms of the Settlement Agreement, Teresa was specifically awarded her grandmother's dishes. (*Id.*). Teresa was also awarded $9,000.00 which constituted cash monies advanced for her school expenses and proceeds from her teacher retirement benefits. (*Id.*).

Undisputedly, the parties owned a home at the time of their divorce. (RR 1:19). Under the terms of the Settlement Agreement, Teresa was awarded no equity in this home. (CR 1:14,16; RR 3:PX#5) (Appendix 3). However, it was also undisputed that under the terms of the Settlement Agreement, Paul became solely responsible for payment of the $82,200.00 mortgage that was attached to the parties'

3

home, along with approximately $35,000.00 in miscellaneous debt that the parties had incurred as of the date of their divorce. (CR 1:16-17; RR 3:PX#5). In contrast, pursuant to the terms of the Settlement Agreement, Teresa did not assume responsibility for payment of any of the $117,000.00 community property debt that the parties had accumulated during their eighteen year long marriage. (*Id*.).

Teresa testified that she left the majority of the furniture in the house because she did not want "the kids to just feel turned upside-down by everything." (RR 2:19). Teresa's choice not to take possession of the property she was awarded under the Divorce Decree for the sake of her children is a far cry from her representation that she "left" Paul basically all the property in the divorce. Rather, the evidence introduced at trial reveals the final property division in the parties' 1987 divorce was more than fair to Teresa.

● The Division of Paul's Retirement Benefits.

It was also undisputed at trial that under the terms of the Settlement Agreement, Teresa was awarded a portion of Paul's retirement benefits. (CR 1:14; RR 2:17; 3:PX#5; FF#1) (Appendices 2-3). Specifically, this provision of the Settlement Agreement reads as follows:

(6) Division of Community Property. The parties community property shall be divided as follows:

A. Wife shall have set over to her as her sole and separate property:

23. A portion of Husband's retirement, pension, thrift, profit sharing and other employee benefits acquired through Husband's employment with Conoco, to be paid if, as, and when received by Husband. Wife's portion shall be one-half times a fraction (the numerator of which shall be the number of years the parties were married during Husband's employment with Conoco and the denominator of which shall be the number of years Husband or his employer, or both, contributed to the plan or benefit) times the amount of the benefit received by Husband.

(CR 1:14; RR 3:PX#5; FF#1) (Appendices 2-3). There was no evidence introduced at trial that a Qualified Domestic Relations Order, ("QDRO"), to this effect was ever entered by any trial court or that Conoco was ever placed on notice of this particular provision of the Settlement Agreement.

● <u>Conoco's Payment of Paul's Retirement Benefits</u>.

Paul testified he began working for Conoco on February 12, 1979. (RR 1:6; FF#2) (Appendix 2). Over the next twenty-six years, Paul continued his employment with Conoco. (RR 1:8). Paul testified that on March 26, 2004, his employment with Conoco ended. (RR 1:8; FF#2) (Appendix 2).

Paul also testified that on November 1, 2004, he cashed out his retirement benefits from Conoco. (RR 1:7). A copy of a check dated November 1, 2004, from Arvest Trust Company, NA, the paying agent for ConocoPhillips Retirement Benefits, was introduced into evidence at trial and reflected that Paul received

$295,500.61 in retirement benefits from Conoco. (RR 2:8; 3:PX#2; FF#3) (Appendix 2).

Paul testified he used the money to pay off a "bunch of bills and debt and everything else."[1] (RR 2:8). He further testified that as of the day of trial, these cash monies were "gone" and he did not have them any more. (*Id.*). It was undisputed at trial that Paul did not forward Teresa her share of the money he received when he cashed out his retirement benefits with Conoco. (*Id.*).

●    Teresa's Enforcement Action.

Approximately twenty-six years after the parties finalized their divorce, and approximately eight and a half years after Paul cashed in his retirement benefits with Conoco, Teresa filed a Petition for Enforcement of Order, ("Petition for Enforcement"), seeking to enforce the Divorce Decree. (CR 1:35-37; FF#10) (Appendix 2). Paul asserted various affirmative defenses to Teresa's enforcement action, including but not limited to, the statute of limitations and laches. (CR 1:25-26; FF#9) (Appendix 2).

---

[1]The trial court found that Paul had utilized some of the retirement benefits he received on November 1, 2004, to pay off a mortgage on his home in August of 2012. (FF#5). (Appendix 2). However, there was no evidence that Paul actually used these particular retirement benefits for that purpose. Rather, Paul simply testified that he had paid off his home mortgage in 2012 and did not identify the funds he utilized in paying this debt. (RR 2:13). Accordingly, the trial court's finding of fact in this regard was incorrect.

A bench trial was held on July 22, 2014. (RR 1:14). Paul and Teresa were the only two witnesses at the bench trial. (RR 2:5,15). At the conclusion of the bench trial, the trial court took the matter under advisement. (RR 2:30).

On August 20, 2014—approximately twenty-seven years after the parties' divorce was final—the trial court issued a letter ruling denying all of Paul's affirmative defenses and awarding Teresa $48,757.60 in actual damages, $2,600.00 in attorney's fees, and costs of court. (CR 1:41; CL#6) (Appendix 2). On September 15, 2014, the trial court entered a written judgment awarding Teresa a total sum of $51,635.60, with postjudgment interest accruing at the rate of six percent. (CR 1:44-45; CL#6) (Appendices 1-2). It is from this judgment that Paul now appeals.

## Summary of the Argument

Teresa waited approximately twenty-six years to seek enforcement of the Divorce Decree's provisions awarding her a portion of Paul's retirement benefits. Paul properly asserted that the statue of limitations barred Teresa's enforcement action. Teresa's cause of action accrued on November 1, 2004 and was barred after November 1, 2006.

Teresa failed to specifically plead the applicability of the discovery rule prior to trial. She also failed to prove her injury in this case was inherently undiscoverable, notwithstanding reasonable diligence. The trial court thus erred in concluding the discovery rule tolled the applicable two-year statute of limitations found in TEX. FAM. CODE § 9.003(b). Accordingly, the trial court abused its discretion in enforcing the provision of the Divorce Decree in regards to the division of Paul's retirement benefits.

# Standards of Review

● <u>Findings of Fact</u>.

A trial court's findings of fact have the same force and dignity as a jury's verdict. **Anderson v. City of Seven Points**, 806 S.W.2d 791, 794 (Tex. 1991). An appellate court reviews a trial court's findings of fact under the same legal and factual sufficiency standard used to support a jury's verdict. **Id.** In an appeal from a bench trial, an attack on the sufficiency of the evidence must be directed at specific findings of fact, rather than at the judgment as a whole. **In the Interest of M.W.**, 959 S.W.2d 661, 664 (Tex. App.–Tyler 1997, writ denied). "Generally, a finding of fact not challenged in a point of error on appeal is binding on the appellate court." **Id**.

● *Legal Sufficiency*.

If a party challenges the legal sufficiency on an issue which he did not have the burden of proof, he must demonstrate on appeal that no evidence supports the adverse ruling. **Westech Eng'g, Inc. v. Clearwater Constructors, Inc.**, 835 S.W.2d 190, 196 (Tex. App.–Austin 1992, no writ). When findings are challenged for legal sufficiency, an appellate court should "view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." **Sixth RMA Partners, L.P. v. Sibley**, 111 S.W.3d 46, 52 (Tex. 2003). In other words, an appellate court considers the evidence in the light most favorable

9

to the challenged finding under a legal sufficiency review. *Point Lookout West, Inc.*

*v. Whorton*, 742 S.W.2d 277, 279 (Tex. 1987).

A legal sufficiency challenge will be sustained when:

(1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere scintilla; or
(4) the evidence establishes conclusively the opposite of a vital fact.

*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert.*

*denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). "If more than a

scintilla of evidence exists to support the questioned finding, the 'no evidence' point

fails." *Leibman v. Grand,* 981 S.W.2d 426, 429 (Tex. App.-El Paso 1998, no pet.).

- *Factual Sufficiency*.

When a party without the burden of proof challenges the factual sufficiency of

the evidence to support an adverse finding, the party must demonstrate that there is

insufficient evidence to support the adverse finding. *Westech*, 835 S.W.2d at 196.

Under a factual sufficiency review, an appellate considers both the evidence that

supports the finding and the evidence that is contrary to the finding. *Plas-Tex., Inc.*

*v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). "In reviewing a factual

sufficiency point, the court of appeals must weigh all of the evidence in the record."

10

***Ortiz v. Jones,*** 917 S.W.2d 770, 772 (Tex. 1996). Such evidence includes "both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence." ***Leibman****,* 981 S.W.2d at 429.

The finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. ***Id.***; ***Ortiz****,* 917 S.W.2d at 772. An appellate court should reverse the judgment and order a new trial if the trial court's fact finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. ***Cain v. Bain***, 709 S.W.2d 175, 176 (Tex. 1986). A finding which "shocks the conscience" or that is "manifestly unjust" will be overturned on appeal. ***Leibman****,* 981 S.W.2d at 429.

● Conclusions of Law.

Conclusions are reviewed *de novo*, and an appellate court is free to draw its own legal conclusions. ***City of Austin v. Whittington***, 384 S.W.3d 766, 778 (Tex. 2012). The legal conclusions of the trial court are therefore not binding upon an appellate court. ***Bates v. Tesar***, 81 S.W.3d 441, 422 (Tex. App.–El Paso 2002, no pet.).

The standard of review for legal conclusions is whether they are correct. ***Heritage Resources, Inc. v. Hill***, 104 S.W.3d 612, 621 (Tex. App.–El Paso 2003, no

pet.). In other words, an appellate court independently evaluates conclusions of law to determine their correctness when they are attacked as a matter of law. *Id*.

An appellate court should follow a trial court's conclusion of law unless it is erroneous as a matter of law. ***Hitzelberger v. Samedon Oil Corp.***, 948 S.W.2d 497, 503 (Tex. App.-Waco 1997, writ denied). If, however, the reviewing court determines that a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. ***BMC Software Belgium, N.V. v. Marchand***, 83 S.W.3d 789, 794 (Tex. 2002).

● <u>(Disputed) Trial Court's Findings of Fact and Conclusions of Law</u>.

In the case at bar, Paul timely requested the trial court to enter findings of fact and conclusions of law. (CR 1:50-51). In response to this request, the trial court entered written Findings of Fact and Conclusions of Law on October 22, 2014. (CR 1:52-53) (Appendix 2). On appeal, the following factual findings and legal conclusions are specifically disputed:

  ● *(Disputed) Findings of Fact*.

   FF#4      Defendant used the retirement distribution to pay bills, including a debt payable to Wells Fargo that was secured by a lien on Defendant's homestead. (CR 1:52) (Appendix 2.

   FF#12     Plaintiff's share of the retirement account is $48,757.60 based on the formula in the Decree (½

12

times (Feb. 1979 to June 1, 1987 i.e. 8 years 3 months) divided by 25 years with the Company (300 months). (CR 1:53) (Appendix 2).

- *(Disputed) Conclusions of Law.*

CL#3      The Statute of Limitations began to run after August 2012 (*Id*.) (Appendix 2).

CL#6      The Court awards Plaintiff a Judgment for $48,757.60, plus $2,600.00 attorney fees, all costs of Court and interest as allowed by law. (*Id*.) (Appendix 2).

● <u>Abuse of Discretion</u>.

An appellate court reviews a trial court's decision on a motion for enforcement for an abuse of discretion. *Mayorga v. Mayorga*, No. 03-13-00787-CV; 2015 TEX. APP. LEXIS 4713, *11 (Tex. App.–Austin, May 8, 2014, no pet.) (mem. op.); *Murray v. Murray*, 276 S.W.3d 128, 143 (Tex. App.–Fort Worth 2008, pet. dism'd). The trial court abuses its discretion if it:

(1)      it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles; or

(2)      erroneously exercises its power by making a choice outside the range of choices permitted by law.

*Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004); *Mayorga*, 2015 TEX. APP. LEXIS 4713 at *11; *Murray*, 276 S.W.3d at 143.

The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does

13

not demonstrate an abuse of discretion has occurred. ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986). Thus, when reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. ***In re Am. Nat'l Cnty Mut. Ins. Co.***, 384 S.W.3d 429, 432 (Tex. App.–Austin 2012, original proceeding).

## Argument and Authorities

**Issue No. 1 Re-Stated:**   Teresa's enforcement action was subject to the applicable statute of limitations. Paul properly raised this defense in his pleadings and during the bench trial. Did the trial court abuse its discretion by enforcing the parties' 1987 divorce decree and awarding Teresa $51,635.60 when her enforcement action was barred by this affirmative defense?

●    Two-Year Statute of Limitations: TEX. FAM. CODE § 9.003(b).

The trial court held that the two year statute of limitations found in Section 9.003(b) of the TEXAS FAMILY CODE was applicable to the Petition for Enforcement.[2] (CR 1:41; CL#1) (Appendix 2). TEX. FAM. CODE § 9.003(b) reads as follows:

§ 9.003. Filing Deadlines

. . .

(b)   A suit to enforce the division of future property not in existence at the time of the original decree must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later, or the suit is barred.

**TEX. FAM. CODE ANN. § 9.003(b)** (LEXIS 2015).

---

[2]The Settlement Agreement included a choice of law provision stating that the law of the State of New Mexico governed the enforcement of the terms of the Settlement Agreement. (CR 1:10; RR 3:PX#5) (Appendix 3). However, neither Paul nor Teresa argued to the trial court that this enforcement action should governed by New Mexico law; therefore, the trial court applied Texas law in this case based on the consent of both parties. *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 695 (Tex. 2006) (explaining that choice of law issues can be waived unless the complaining party objects to the law being applied, requests application of another state's law, and requests judicial notice of the law of the other state).

15

Generally, when a cause of action accrues is a question of law. ***Provident Life & Accident Ins. Co. v. Knott***, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a party to seek a judicial remedy. ***Id***. In most cases, a cause of action accrues when a wrongful act causes a legal injury regardless of when the plaintiff learns of that injury or if all the resulting damages have yet to occur. ***Id***. However, an exception may defer accrual of a claim—the discovery rule. ***Id***.

● Discovery Rule**.**

Statutes of limitations are intended to compel plaintiffs to assert their claims "within a reasonable period while the evidence is fresh in the minds of the parties and witnesses." ***Wagner & Brown, Ltd v. Horwood***, 58 S.W.3d 732, 734 (Tex. 2001). The public policy behind statutes of limitations is that it "is in society's best interest to grant repose by requiring that disputes be settled or barred within a reasonable time." ***Id***.

The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. ***Id.; Austin Indep. Sch. Dist. v. Lofters***, No. 03-14-00071-CV; 2015 TEX. APP. LEXIS 3115, *10 (Tex. App.–Austin, Apr. 1, 2015, pet. filed) (mem. op.).

16

The discovery rule is a "very limited exception to statutes of limitations." *Horwood*, 58 S.W.3d at 734 (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.3d 453, 455 (Tex. 1996)). The rule should be restricted to exceptional cases to avoid defeating the purposes behind the limitation statutes. *Treuil v. Treuil*, 311 S.W.3d 114, 118 (Tex. App.–Beaumont 2010, no pet.)(citing *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)). Thus, the discovery rule is only used when the plaintiff's injury is both "inherently undiscoverable" and "objectively verifiable." *Id*. at 119; *Lofters*, 2015 TEX. APP. LEXIS 3115, *10; *Horwood*, 58 S.W.3d at 734.

- *Inherently Undiscoverable*.

"An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period, despite due diligence." *Horwood*, 58 S.W.3d at 734-35. "Inherently undiscoverable" does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period. *Id*. Rather, the determination of whether an injury is "inherently undiscoverable" is made on a categorical basis. *Id*.

Accordingly, a court's focus is on the type of injury, not the particular injury itself. *Id*. "Discovery rule cases focus on categorical 'types of injury, not causes of action.'" *Texas Health Presbyterian Hosp. Dallas v. Burch*, No. 05-14-00665-CV, 2015 TEX. APP. LEXIS 625, *7 (Tex., Jan. 22, 2015).

17

- *Pleading Requirement.*

The discovery rule is also a plea in confession and avoidance. ***Woods v. William M. Mercer, Inc.***, 769 S.W.2d 515, 517 (Tex. 1988). Consequently, a party seeking to avail himself of the discovery rule must plead the rule, either in his original petition or in an amended or supplemental petition in response to a defendant's assertion of a statute of limitations defense as a matter of law. ***Id***.

"A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived." ***Id***. at 518; ***Proctor v. White***, 172 S.W.3d 649, 652 (Tex. App.–Eastland 2005, no pet.) (same); *also see* ***Treuil***, 311 S.W.3d at 114 (ex-wife amended original petition and asserted discovery rule after ex-husband asserted statute of limitations barred her claim to portion of his retirement benefits); ***In the Estate of Melchior***, 365 S.W.3d 794, 799 (Tex. App.–San Antonio 2012, pet. denied) (discovery rule held not applicable because Estate did not specifically plead it).

- *Burden of Proof.*

Additionally, the party seeking to benefit from the discovery rule also bears the burden of proving that his injury was both "inherently undiscoverable" and "objectively verifiable." ***Woods***, 769 S.W.2d at 518. A party asserting the discovery rule at trial to avoid a statute of limitations bar must prove all elements of the rule.

***Tipton v. Brock***, 431 S.W.3d 673, 677 (Tex. App.–El Paso 2014, pet. denied); *also see* ***Treuil***, 311 S.W.3d at 119 (because ex-wife sought to benefit from discovery rule, she had burden to prove the nature of her injury–ex-husband's failure to pay her under divorce decree–was inherently undiscoverable).

- *Reasonable Diligence.*

Finally, the discovery rule does not excuse a party from exercising reasonable diligence in protecting his own interests. ***Pitman v. Lightfoot***, 937 S.W.2d 496, 510 (Tex. App.–San Antonio 1992, writ denied); ***Conoco, Inc. v. Amarillo Nat'l Bank***, 14 S.W.3d 325, 328 (Tex. App.–Amarillo 2000, no pet.) (finding secured parties must take some responsibility to ascertain status of their collateral and holding discovery rule inapplicable to toll statute of limitations).

Indeed, parties have an *obligation* to protect their interests by exercising due diligence. ***HECI Exploration Co. v. Neel***, 982 S.W.2d 881, 982 (Tex. 1998) (court held that because mineral owners have some obligation to protect their interests by exercising reasonable diligence, their injury was not inherently undiscoverable, and discovery rule did not apply to their claims). ***Horwood***, 58 S.W.3d at 737 (court held injury was not inherently undiscoverable because royalty owner could discover such injuries in timely manner by exercising due diligence).

Whether reasonable diligence was used is generally a question of fact unless the evidence is such that reasonable minds could not differ as to its effect. *Pitman*, 937 S.W.2d at 510. Under these circumstances, the issue of reasonable diligence become a question of law. *Id*.

● Accrual of Teresa's Injury.

In the case at bar, the Settlement Agreement required Paul to remit to Teresa a portion of his retirement benefits "if, as, and when" they were received by Paul. (CR 1:4; RR 3:PX#5) (Appendix 3). Teresa's injury therefore occurred on November 1, 2004, when Paul received his retirement funds from Conoco and when upon his receipt of same, he failed to immediately remit Teresa's portion to her. *See Treuil,* 311 S.W.3d at 118 (ex-wife's injury occurred on date ex-husband withdrew all funds from retirement account and upon doing so, then failed to immediately remit ex-wife's portion to her). Under the two-year statute of limitations found in TEX. FAM. CODE § 9.003(b), Teresa's enforcement action was barred after November 4, 2006, unless the discovery rule applies in this case.

● Inapplicability of Discovery Rule.

  ● *Waiver of Discovery Rule.*

The trial court abused its discretion in denying Paul's statute of limitations defense in the case at bar. (CR 1:45-46) (Appendix 1). Paul properly plead this

affirmative defense upon being placed on notice that Teresa had registered the Divorce Decree in Texas. (CR 1:25). Additionally, Paul reasserted this affirmative defense during the bench trial.[3] (RR 2:29).

Because Paul plead properly plead this affirmative defense, Teresa was required to plead the discovery rule. *See Woods*, 769 S.W.2d at 517. If Teresa failed to plead that the discovery rule applied to the case at bar, she waived this exception, and the trial court could not on its own motion toll the running of the two-year statute of limitations. *See Id.* at 518.

A review of the Petition for Enforcement establishes that Teresa did not specifically plead the application of the discovery rule. (CR 1:35-37). Teresa did not amend the Petition for Enforcement prior to trial. The only language in the Petition for Enforcement which might be construed as alluding to the discovery rule is a single statement found on the second page of the Petition for Enforcement which reads as follows: "Petitioner became aware of this [Paul's receipt of Conoco retirement benefits] in late 2012 or early 2013." (CR 1:36). Such general statement does not satisfy the specific pleading requirement in regards to the discovery rule as set forth by the Texas Supreme Court. *See Woods*, 769 S.W.2d at 517-18.

---

[3]Paul's trial attorney actually argued that Teresa's enforcement action was subject to a four year statute of limitations; therefore her suit was barred as of November 4, 2008. (RR 2:29). As Teresa filed the Petition for Enforcement on April 3, 2014, her action would still have been barred if a four-year statute of limitations is applicable to the case at bar. (CR 1:35-37).

21

If Teresa was going to raise the application of the discovery rule at trial, she had a duty to specifically plead this exception in her pleadings. As she failed to specifically plead the applicability of the discovery rule in the Petition for Enforcement, Teresa waived this exception at trial. As such, the trial court erred in concluding that the two-year statute of limitations began to run after August 2012 and also erred in granting Teresa's request to enforce the Divorce Decree. (CL#3; CL#4) (Appendix 2). Because the discovery rule did not toll the two-year statute of limitations in this case as a matter of law, this Court should reverse the trial court's judgment and hold Teresa take nothing by her enforcement action against Paul.

*If this Court determines Teresa properly pled the applicability of the discovery rule in the Petition for Enforcement, Paul presents the following argument for the Court's consideration.*

- *No Inherently Undiscoverable Injury.*

The trial court abused its discretion in granting the Petition For Enforcement because Teresa failed to meet her burden of proof in establishing the applicability of the discovery rule in the case at bar. Specifically, Teresa failed to prove that her injury in this case was inherently undiscoverable and therefore justified the tolling of the two-year statute of limitations until she discovered her injury in August of 2012.

To the contrary, if Teresa had simply used reasonable diligence in protecting her interest in Paul's retirement benefits, she would have easily discovered his early retirement from Conoco and his subsequent withdrawal of all his retirement benefits.[4]

- **No Reasonable Diligence**.

For example, at the time of the parties' divorce, or any time over the next nineteen years, Teresa could have requested that a QDRO be entered by a trial court. Once the QDRO was in place, Teresa could easily have sent a copy of same to Conoco. Upon receipt of the QDRO, Conoco would have had a duty to notify Teresa of Paul's withdrawal of his retirement benefits. Conoco would also have had a duty to segregate out her portion of Paul's retirement benefits prior to making any disbursements to Paul. However, Teresa introduced no evidence that from June 1, 1987 through November 4, 2006, she made any effort to have a QDRO entered of record and a copy of same sent to Conoco.

Likewise, Teresa could have simply sent Conoco a certified copy of the Divorce Decree and Settlement Agreement immediately after the parties' divorce or

---

[4]There appears to be no Texas case specifically holding that an ex-spouse's actions regarding his or her retirement accounts, as a category, are inherently undiscoverable. *See* *Trueil*, 311 S.W.3d at 119-20 (appellate court side-stepped issue of whether ex-husband's failure to give ex-wife her portion of his retirement benefits as required under parties' divorce decree constituted an inherently undiscoverable injury). Such lack of authority is not surprising, however, as retirement accounts are easily discoverable and thus do not constitute the exceptional type of categorical injury to which the discovery rule should apply.

anytime over the next nineteen years. If Teresa had placed Conoco on notice that she had been awarded a portion of Paul's retirement account in their divorce, Conoco would have notified her that at Paul's request, it had disbursed all of his retirement benefits to him on November 1, 2004. However, Teresa introduced no evidence that from June 1, 1987 through November 4, 2006, she ever sent Conoco a copy of the Divorce Decree or the Settlement Agreement.

Teresa could also have simply picked up the telephone, called Conoco directly, and asked about the status of Paul's retirement benefits at some point during the nineteen years after the parties' divorce was finalized. If a telephone call was unsuccessful, Teresa could have sent Conoco a written letter inquiring about the status of Paul's retirement benefits. However, Teresa introduced no evidence that from June 1, 1987 through November 4, 2006, she ever attempted to contact Conoco directly about Paul's retirement benefits.

A simple inquiry to Conoco itself anytime between November 4, 2004 through November 4, 2006, would have brought Paul's withdrawal of his retirement benefits to light. *See **Urbanczyk v. Urbanczyk***, No. 07-07-0077-CV; 2009 TEX. APP. LEXIS 587, *7 (Tex. App.–Amarillo, Jan. 29, 2009, no pet.) (mem. op.) (court held discovery rule not applicable because plaintiff's injury was not inherently undiscoverable; a simple request to brokerage firm itself should have brought unauthorized transfer to

24

light). All Teresa had to do was contact Conoco and she would have discovered her injury. She simply chose not to make such contact.

Additionally, Teresa could have asked her children about the status of Paul's whereabouts and his current employment. If she had ever asked the children about their father, she would have learned---at a bare minimum---that Paul had retired from Conoco and was living in San Angelo, Texas. Yet, Teresa intentionally chose to never talk to her two children about their father.

Teresa testified that she never discussed Paul with her children because she did not want her "children to be drug into any kind of stuff like that." (RR 2:21). Teresa's reticence in this regard might be considered laudable while the children were minors. However, Teresa's reluctance to speak to her children about Paul became unreasonable when one considers that by 2004, both children were full-fledged adults----with their daughter being twenty-six or twenty-seven years old and their son being thirty-one or thirty-two years old. (RR 2:18). Simply checking with her two adult children regarding the status of Paul's employment and his current whereabouts would not have caused her children any undue consternation.[5]

---

[5]Paul testified that Teresa should have known where he was living and working through contact with their children. (RR 2:10).

To the contrary, if Teresa had simply asked one of her children during 2004 where Paul was working and living, her children would have informed her that he had retired early from Conoco and was living in San Angelo, Texas. Such information would have spurred Teresa to make further inquiries about the status of Paul's retirement benefits. As a result of these inquiries, Teresa would have learned of Paul's early withdrawal of all his retirement benefits.

Finally, Teresa could have always contacted Paul directly during the nineteen years after the parties' divorce to determine where he was living and working. Teresa testified that she had only seen Paul "to talk to him one time" since they were divorced. (RR 2:24). She further testified that this in-person meeting happened prior to his retirement from Conoco. (*Id*.).

It was unnecessary, however, for Teresa to actually meet with Paul in person to make her diligent inquiries. She could have simply called him on the telephone, sent him a letter, or sent him an email. Instead, she failed to make any effort whatsoever to contact Paul about her portion of his retirement benefits from Conoco for over twenty-five years.

The Record reflects Teresa had several sources from which she could have timely discovered her injury, including Conoco, her two children, and Paul himself. As such, Teresa's injury in this case was not inherently undiscoverable. *See*

26

*Horwood*, 58 S.W.3d at 737 (holding that when a party can seek information from several sources to evaluate the propriety of another's action, discovery rule does not apply).

- **Teresa's Specialized Knowledge**.

The Record in this case establishes that Teresa failed to use reasonable diligence to discover Paul's early withdrawal of his retirement benefits and his failure to send her a portion of the cash funds he received from Conoco to which she was entitled under the terms of the Settlement Agreement. Teresa's lack of reasonable diligence becomes even more apparent when one considers her educational background and professional expertise.

Teresa testified that she was licensed as an attorney in the State of Oklahoma in February of 1990. (RR 2:23). She testified that she was also licensed to practice law in Texas in November of 1990. (*Id*.). Over the next twenty years, Teresa testified she practiced law in both Houston, Texas and Oklahoma City, Oklahoma. (*Id*.). At the trial, Teresa testified she was currently retired and living in Florida-- having surrendered her law license in 2010. (RR 2:20,23). She further testified that she became disabled after a motor scooter accident in October of 2006 and was

currently receiving monthly federal disability payments in the amount of $1,400.00.[6] (RR 2:20,23-24).

Teresa graduated from law school, passed two bar exams, and practiced law in both Texas and Oklahoma for approximately twenty years. (RR 2:23). As such, she not only had the opportunity to use reasonable diligence to timely discover her injury in this case, she also had the legal knowledge, expertise, and skill to discover Paul's actions concerning his Conoco retirement benefits. However, she failed to utilize her specialized knowledge to protect the property interest in Paul's retirement benefits which she was awarded under the Divorce Decree.

Furthermore, Teresa specifically testified she knew that she had been awarded a portion of Paul's retirement benefits under the Divorce Decree and that this property right was to accrue at some point in the future. (RR 2:24-25). Yet, when questioned at trial as to why she waited approximately twenty-five years to take any action to enforce this property right, Teresa responded "–what would you have me do?" (RR 2:25).

Texas case law would have Teresa use reasonable diligence to discover her injury in this case. The discovery rule does not excuse Teresa's failure to use

---

[6]As to the nature of Teresa's disability, she testified that she had torn up both her knee and back during the motor scooter accident. (RR 2:23-24). She also testified that she could no longer practice law because she was on "morphine and a lot of drugs" and she believed it would be committing malpractice for her to represent a client. (RR 2:24).

reasonable diligence to protect her property interests in Paul's retirement benefits. Teresa had several different means and sources available to her which she could have utilized and timely discovered Paul's actions in regards to his Conoco retirement benefits. As a practicing attorney, Teresa also had the specialized knowledge and legal skills she could have used to timely discover her injury. However, from 1987 until 2012, Teresa intentionally chose not to take any actions at all until she first learned of Paul's actions and then contacted an attorney regarding the issue of the retirement benefits. (RR 2:21).

Teresa's lack of reasonable diligence prevented her from discovering her injury in this case. Accordingly, Teresa's injury was not inherently undiscoverable as required for the application of the discovery rule. Because the discovery rule is inapplicable to the case at bar, Teresa's enforcement action is barred by the two-year statute of limitations under TEX. FAM. CODE § 9.003(b) as a matter of law.

## Conclusion

Because Teresa failed to meet her burden of proof to receive the benefit of the discovery rule, the trial court erred in concluding the two-year statute of limitations was tolled and only began running as of August, 2012. The trial court also erred in concluding the Motion for Enforcement was timely filed as of April, 2014. Based on these erroneous conclusions of law, the trial court abused its discretion in granting the Petition for Enforcement and in awarding Teresa a money judgment for the total sum of $51,635.60.

This Court should therefore 1) find the discovery rule is inapplicable to this case and 2) conclude that Teresa' enforcement action was barred by the two-year statute of limitations found in TEX. FAM. CODE § 9.003(b). Based on this finding and conclusion, the Court should reverse the trial court's judgment in all respects and render judgment that Teresa take nothing by her enforcement action against Paul.

## Prayer

Appellant Paul D. Simmons prays that this Court reverse the trial court's Judgment dated September 15, 2014 in all respects and render judgment in his favor.

Alternatively, Appellant Paul D. Simmons prays that this Court reverse the trial court's Judgment dated September 15, 2014 in all respects and remand this case to the trial court for further proceedings in accordance with its ruling.

Appellant Paul D. Simmons also requests the Court to grant him any further relief to which he may be justly entitled.

Respectfully submitted,

**GRAY & BRIGMAN, PLLC**
206 West College Ave.
San Angelo, Texas 76903
Tel: (325) 653-4594
Fax: (325) 657-0039
Email: sgreen@grayandbrigman.com

By: /s/ Melvin Gray
Melvin Gray
State Bar No.0832800

**Appellate Counsel for
Appellant Paul D. Simmons**

## Certificate of Compliance

In accordance with Rules 9.4(e) and (i) of the TEXAS RULES OF APPELLATE PROCEDURE, the undersigned attorney of record certifies that the Brief of Appellant contains **14-point** typeface for the body of the brief, **12-point** typeface for footnotes in the brief, and contains **7,066** words, excluding those words identified as not being counted in Rule 9.4(i)(1) and was prepared on Word Perfect Version 9.

/s/ Melvin Gray
Melvin Gray

## Certificate of Service

I certify that a copy of the Brief of Appellant was served electronically on this the 13th day of July, 2015, to the following party and that the electronic transmission was reported as complete:

Kirk Hawkins
Attorney at Law
224 West Beauregard
Suite 303
San Angelo, Texas 76903

**Attorney for Appellee**
**Teresa A. Simmons**

/s/ Melvin Gray
Melvin Gray

# APPENDIX

# APPENDIX 1

No. B130232F

| TERESA A. SIMMONS | ) | IN THE DISTRICT COURT OF |
| | ) | |
| V. | ) | TOM GREEN COUNTY, TEXAS |
| | ) | |
| PAUL D. SIMMONS | ) | 119TH JUDICIAL DISTRICT |

## JUDGMENT

On the 22nd day of July, 2014, the Court heard Petitioner's Petition for Enforcement of Order.

Petitioner TERESA A. SIMMONS appeared in person and through attorney of record Kirk Hawkins.

Respondent PAUL D. SIMMONS appeared in person and through attorney of record Melvin Gray.

The making of a record of testimony was made by Lori Dobbins, Official Court Reporter.

The Court has considered the pleadings and official records on file in this cause and the evidence and is of the opinion that judgment should be rendered for Petitioner.

The Court specifically finds that a suit to enforce future interest must be brought within two (2) years of the anniversary of the date the right to the property matures or accrues or the suit is barred. The Court finds that the earliest Petitioner TERESA A. SIMMONS learned about the retirement distribution was after August 2012, and therefore the Statute of Limitations began to run after August 2012. The Court further finds that Petitioner's suit to enforce the future right was filed April 2014, within two (2) years of Petitioner's discovery of the distribution.

Therefore, it is accordingly ADJUDGED that TERESA A. SIMMONS, Petitioner, recover from PAUL D. SIMMONS, Respondent, judgment for--

1) $48,757.60 as the principal amount due;

44

2) $278.00 costs of court;

3) $2,600.00 attorney's fees;

4) $51,635.60 total judgment;

5) post-judgment interest at the rate of 6% per year on the judgment from the date of judgment until paid and all costs of court.

IT IS ORDERED that Petitioner shall have all writs of execution and other process necessary to enforce this judgment.

All relief not expressly granted herein is denied.

SIGNED this _September 15, 2014_

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

_____
KIRK HAWKINS/
Attorney for Petitioner


_____
MELVIN GRAY/
Attorney for Respondent

45

# APPENDIX 2

| TERESA SIMMONS | § | In the 119th District |
|---|---|---|
| | § | Court |
| | § | of |
| VS. | § | |
| PAUL D. SIMMONS | § | Tom Green County, |
| | § | Texas |

# Findings of Fact & Conclusions of Law

*Findings of Fact:*

1. Plaintiff (former wife) and Defendant (former husband) were divorced on June 1, 1987 in New Mexico. Plaintiff was awarded a portion of Defendant's retirement acquired through Defendant's employment with Conoco. Plaintiff's portion was to be paid if, as and when received by husband. Wife's portion was defined in the Divorce.

2. Defendant worked for Conoco for a total of 25 years, from February 12, 1979 to 2004. In 2004, Targa purchased Conoco-Phillips and Defendant continued to work for Targa. While working for Conoco, he was married to Plaintiff for 8 years, 3 months (2/79 to 6/1/87).

3. Defendant received $295,500.61 retirement benefits from Conoco employment on 11/1/2004.

4. Defendant used the retirement distribution to pay bills, including a debt payable to Wells Fargo that was secured by a lien on Defendant's homestead.

5. Defendant paid Wells Fargo in August, 2012.

6. Wells Fargo signed a Release of lien on August 29, 2012.

7. Plaintiff learned of this retirement distribution sometime after August 2012 when her daughter told her that Defendant was mad at a loan company and paid them with proceeds from a retirement distribution.

8. Plaintiff filed a Notice of Registration of Foreign Decree in Tom Green County Texas District Court on April 4, 2013 and then gave notice to Defendant of the Registration and in a note stated "We've registered this decree in anticipation of having to enforce a portion of that decree regarding your Conoco retirement."

9. On April 22, 2013, Defendant filed a response, including affirmative defenses of laches and statute of limitations. Defendant requested a hearing to contest enforcement of the registered order.

10. On April 3, 2014, Plaintiff filed a Petition to Enforce the Order.

---

Findings of Fact and Conclusions of Law

11. Plaintiff has incurred reasonable and necessary attorney fees of $2,600 to collect her share of the retirement and court costs.

12. Plaintiff's share of the retirement account is $48,757.60 based on the formula in the Decree [1/2 times (Feb 1979 to June 1, 1987 i.e. 8 years 3 months) divided by 25 years with the Company (300 months).

### Conclusions of Law:

1. Family Code Section 9.003(b) provides:

   A suit to enforce the division of future property not in existence at the time of the original decree must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later, or the suit is barred.

2. The earliest Plaintiff learned about the retirement distribution to Defendant was after August 2012.

3. The Statute of Limitations began to run after August 2012.

4. Suit to enforce the future right was filed April 2014, within 2 years of Plaintiff's discovery of the distribution.

5. Laches is an equitable remedy to prevent an inequitable result. Defense of laches is denied.

6. The Court awards Plaintiff a Judgment for $48,757.60, plus $2,600 attorney fees, all costs of Court and interest as allowed by law.

October 22, 2014

_____
Date Signed

Ben Woodward, Judge Presiding

**APPENDIX 3**

FIFTH JUDICIAL DISTRICT
EDDY COUNTY NEW MEXICO
FILE

'87 JUN -1 P4:03

CLERK OF THE DISTRICT COURT

2013 MAR 28 PM 1:39
SHERI WOODFIN, DIST. CLERK
TOM GREEN COUNTY, TEXAS
FOR [illegible]

IN THE DISTRICT COURT OF EDDY COUNTY

STATE OF NEW MEXICO

PAUL D. SIMMONS,                          )
                                          )
                 Petitioner,              )
                                          )
vs.                                       )      No. DR-87-40-S
                                          )
TERESA A. SIMMONS,                        )
                                          )
                 Respondent.              )

## DECREE OF DISSOLUTION OF MARRIAGE

THIS MATTER having come before the Court upon the verified Petition for Dissolution of Marriage on file herein, and upon the Child Custody, Support and Property Settlement Agreement executed by the parties and presented to the Court for its consideration, and petitioner appearing with his attorney, John Funk, and the Court having heard the testimony and being sufficiently advised in the premises, FINDS:

1. Petitioner has been a resident of the State of New Mexico for more than six months immediately preceding the filing of the Petition herein, and the Court has jurisdiction of the parties and the subject matter of this action. Because of discord and conflict of personalties, the legitimate ends of the marriage relationship have been destroyed, preventing any reasonable expectation of reconciliation. All material allegations in the Petition filed herein are true.

8

2. The Child Custody, Support and Property Settlement Agreement executed by the parties and presented to the Court is fair to both parties and should be approved.

Based on the foregoing, the Court CONCLUDES:

That the marriage of the parties should be dissolved and the terms of the Child Custody, Support and Property Settlement Agreement executed by the parties should be incorporated herein with the same force and effect as if fully set forth at this point.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the marriage of the parties be, and hereby is dissolved, and that the Child Custody, Support and Property Settlement Agreement on file herein be, and hereby is incorporated by reference as if fully set forth at this point.

_____
James L. Shuler, District Judge

SUBMITTED BY:

MAREK & YARBRO, P.A.

By_____
John R. Funk
110 W. Shaw
P. O. Drawer AA
Carlsbad, New Mexico 88221-AA
(505) 885-6615

Attorneys for Petitioner

I HEREBY CERTIFY THE ABOVE IS A TRUE AND CORRECT COPY OF THE ORIGINAL FILED ON 9-1-87
WITNESS MY HAND AND SEAL THIS 2-12-13

ERIC ELLIS
CLERK OF DISTRICT COURT
BY_____
DEPUTY

9

APPROVED BY:

DICKERSON, FISK & VANDIVER

By _Rebecca Dickerson_
Rebecca Dickerson
Seventh & Mahone, Suite E
Artesia, New Mexico 88210
(505) 746-9841

Attorneys for Respondent

FIFTH JUDICIAL DISTRICT
EDDY COUNTY NEW MEXICO
FILED

'87 JUN -1 P4:03

CLERK OF DISTRICT COURT

2013 MAR 28 PM 1:39
SHERI WOODFIN, DIST.CLERK
TOM GREEN COUNTY, TEXAS
FILED FOR RECORD

IN THE DISTRICT COURT OF EDDY COUNTY

STATE OF NEW MEXICO

PAUL D. SIMMONS,                    )
                                    )
            Petitioner,             )
                                    )
vs.                                 )   No. DR-87-40-S
                                    )
TERESA A. SIMMONS,                  )
                                    )
            Respondent.             )

CHILD CUSTODY, SUP. AND
PROPERTY SETTLEMENT AGREEMENT

THIS AGREEMENT, made and entered into by Paul D. Simmons, hereinafter referred to as "Husband" and Teresa A. Simmons, hereinafter referred to as "Wife"

WITNESSETH:

A.  The parties hereto are husband and wife but proceedings for the dissolution of the marriage are presently pending in the District Court of Eddy County, in the cause styled above;

B.  Petitioner's, Paul D. Simmons, mailing address is ███████████████████████████ █████; Petitioner's Social Security Number is ████████; and Petitioner's date of birth is ████████. Respondent's, Teresa A. Simmons, mailing address is ██ █████████ ████ ████████████████

11

███████ ; Respondent's Social Security Number is ████████ ; and Respondent's date of birth is ████ ████████.

C. It is the intention of the parties to enter into an agreement under which their respective rights and obligations as to their minor children, property rights and all rights, privileges and obligations to each other arising out of the marriage relationship or otherwise should be fully provided for.

NOW, THEREFORE, in consideration of the foregoing, it is agreed as follows:

1. Purpose of Agreement. This agreement shall be submitted to the District Court of Eddy County for approval of its terms and if approved, for incorporation into the Decree of Dissolution of Marriage to be entered in these proceedings as the order of the Court. If not approved and incorporated, this agreement shall have no effect.

2. Child Custody and Visitation. Both of the parties are fit and proper persons to have the care, custody and control of the parties' minor children, ████████████████ ████ ██ ██ ████████████. The parties shall be awarded joint custody of the minor children, pursuant to §40-4-9.1 N.M.S.A. (1978), upon the following parenting plan. Husband shall have physical custody of the minor children during each regular school year. Wife shall have physical custody of the minor children during their summer school vacation. Each parent shall be entitled to reasonable visitation with the children during the other parent's period of physical custody. The parties agree that the minor children have

12

2

both reached the age at which their preferences and activities should be considered in setting visitations. The parties agree to cooperate with each other and the children to insure that the children spend significant amounts of time with each parent. The parties further agree to each be supportive of the children's relationship with the other parent, positive about that relationship, to encourage the children to enjoy their relationship with the other parent and not to interfere with the parent/child relationship of the other.

3. <u>Child Support</u>. During summer school vacations, or other periods of time when Wife shall have physical custody of the minor children for 30 days or more, Husband shall pay to Wife for the support and maintenance of the parties' minor children $100.00 per month, due on the first day of the month. While Wife attends law school, she shall not be obligated to pay Husband any amount for the support and maintenance of the minor children.

4. <u>Custody and Support Jurisdiction</u>. Upon Wife's graduation from law school, this Court shall have continuing jurisdiction to decide whether the custody and/or child support provided in this agreement should be modified.

5. <u>Temporary Support</u>. Until December 31, 1988, Wife shall continue to use certain credit cards currently in her possession for the purchase of gasoline and automobile

13

maintenance supplies. Husband agrees to pay all such expenses charged on the credit cards up to a maximum amount of $100.00 per month.

6. <u>Division of Community Property</u>. The parties' community property shall be divided as follows:

A. Wife shall have set over to her as her sole and separate property:

1. Jewelry
2. 1986 Oldsmobile
3. 1968 Ford Mustang
4. $9,000.00, comprised of cash advanced for school expenses and proceeds from her teacher retirement benefits.
5. Apple 2E computer and equipment
6. Waterbed
7. Microwave
8. Hideabed
9. Wood desk
10. 19" color television and VCR
11. Dinette table and four chairs
12. Lamp tables
13. Lamp belonging to Wife's grandmother
14. Dishes belonging to Wife's grandmother
15. 150 cassette tapes
16. 22 mag. pistol
17. 20 gauge 1100 automatic shotgun
18. Desk, leather working table and leather working equipment.
19. Sewing machine
20. Food dehydrater
21. Stereo
22. Redwood picnic table and four benches
23. A portion of Husband's retirement, pension, thrift, profit sharing and other employee benefits acquired through Husband's employment with Conoco, to be paid if, as, and when received by Husband. Wife's portion shall be one-half times a fraction (the numerator of which shall be the number of years the parties were married during Husband's employment with Conoco and the denominator of which shall be the number of years Husband or his employer, or both, contributed to the plan or benefit) times the amount of the benefit received by Husband.
24. Wife's personal effects and belongings, and the household furniture and furnishings and other personal property currently in her possession.

14

B.   Husband shall have set over to him as his sole and separate property:

1.  Master bedroom furniture
2.  10" black and white television
3.  Three end tables
4.  Chest of drawers
5.  Waterbed
6.  Two wood chairs
7.  Yellow easy chair
8.  Half bed in extra bedroom
9.  Set of encyclopedias
10.  12 gauge pump action shotgun
11.  .22 rifle
12.  30/30 rifle
13.  410 shotgun
14.  17" black and white television
15.  Texas Instruments computer
16.  Wood chair in extra bedroom
17.  Suitcases
18.  19" color television and stand
19.  Two recliner chairs
20.  Coffee table
21.  Two end tables
22.  Lamp in living room
23.  Two sofas
24.  Wood rocking chair in living room
25.  Dinette table
26.  Black and white television
27.  Wood dinette table with four wooden chairs
28.  Microwave and stand
29.  Sears trash compactor
30.  19 cubic foot refrigerator
31.  Electric stove
32.  Pots, pans and dishes
33.  Pool table
34.  Four bar stools
35.  Color television (broken)
36.  Queen size bed
37.  19" black and white television and stand
38.  Chest of drawers in Amy's room
39.  Two bookshelves
40.  Small stereo in Amy's room
41.  Deep freeze
42.  Electric dryer
43.  Washing machine
44.  Christmas tree and decorations
45.  Half bed in Jason's room
46.  Chest of drawers in Jason's room
47.  Small stereo in Jason's room

15

48. Small desk in Jason's room
49. Home made picnic table
50. Lincoln welder
51. Wooden patio chairs
52. Gas barbecue grill
53. Assorted hand tools
54. Lawn mower
55. Electric edger
56. Various lawn equipment
57. 1973 travel trailer
58. Gooseneck stock trailer
59. Five horses
60. Three saddles
61. Horse halters, bridles and tack
62. 100 bales of hay
63. 1985 F250 Ford pickup
64. Residence located at 1308 Bryan Circle
65. Jewelry
66. 35 mm camera and lens
67. Coin collection.
68. Husband's retirement, pension, thrift, profit sharing and other employee benefits acquired through Husband's employment with Conoco, except that portion set aside to Wife in paragraph 6.A.23 above.
69. Husband's personal effects and belongings and the household furniture and furnishings and other personal property currently in his possession.

7. Division of Community Debts.

A. Husband shall assume and pay and hold Wife harmless for the following indebtedness of the parties:

1. Conoco thrift loan in the approximate amount of $11,078.93.

2. Conoco Credit Union in the approximate amount of $8,901.36.

3. Internal Revenue Service in the amount of $531.60.

4. VISA in the approximate amount of $1,076.64.

5. Visa Gold Card in the approximate amount of $4,834.57.

16

6. Master Card (California) in the approximate amount of $1,207.75.

7. Master Card (Oklahoma) in the approximate amount of $256.26.

8. Conoco Gas Card in the approximate amount of $461.89.

9. Sears in the approximate amount of $1,501.39.

10. United New Mexico Bank in the approximate amount of $3,727.81.

11. Penny's in the approximate amount of $31.10.

12. Gold Master Card in the approximate amount of $600.00.

13. Columbia Pacific University in the amount of $1,739.71

14. United New Mexico Bank at Albuquerque in the approximate amount of $82,200.00, secured by the parties' residence.

B. Should any further community liabilities be found to exist, such liabilities shall become the sole and separate liability of the party having incurred the liability, and that party shall hold the other party harmless from said liability.

C. Each party indemnifies the other party and holds the other party harmless from all liability, expenses, costs and

17

attorney's fees incurred when a creditor attempts to collect, or does collect, a debt or liability from one party that was assumed by the other party under this agreement.

7. _Income Tax._ Husband and Wife shall file a joint income tax return for the tax year 1986 and separate returns for subsequent tax years.

A. Each party agrees to provide the other with any information or documentation necessary to enable the parties to file such income tax returns.

B. The parties agree that all refunds due on the 1986 income tax returns shall be paid one-half to Wife and one-half to Husband.

C. Each party will indemnify the other for all costs, expenses and attorney's fees incurred when any tax authority attempts to collect, or does collect, a tax obligation from one party that was assumed by the other party under this agreement. In the event any prior joint return is audited or contested or any additional tax, interest or penalties are found due, the parties will each pay only one-half of such additional tax, interest or penalties. The indemnification stated above shall also be applicable to the tax, interest or penalty liability on such prior returns. The indemnification stated above shall not apply when the tax, interest or penalty liability arises from an intentional misrepresentation, failure to report income or other fraud. Under such circumstances, the party responsible for the intentional misrepresentation, failure to report or fraud shall

be fully responsible for any liabilities incurred and shall hold the other party harmless for any such liabilities.

D. So long as Husband has physical custody of the children for more than six months of each year, Husband will be allowed to take the children as deductions for income tax purposes and Wife will execute whatever forms are required by tax authorities to effectuate this provision.

8. Voluntary Execution. Each party states that this compromise agreement is fair and equitable and has been entered into without any undue influence, fraud or misrepresentations, or for any purpose except as specified herein. This Agreement settles all claims and disputes between the parties and contains the entire understanding of the parties, who acknowledge that there have been and are no representations, warranties, covenants or understandings other than those expressly set forth. Each party specifically states a complete disclosure has been made of all assets and liabilities to the other party.

The parties agree to execute all deeds, titles, documents, and papers necessary to effectuate this agreement. The parties further agree that if any such deeds, documents and papers are not executed within 30 days from the Decree of Dissolution of Marriage, the Decree shall act as the conveyance of all property (including as authorized by §47-1-12 N.M.S.A. (1978). The remedies provided under the New Mexico Rules of Civil Procedure, and specifically Rule 70, shall also be available to each party.

19

9.   New Mexico Law.   This agreement shall be governed, construed and enforced in accordance with the laws of the State of New Mexico.

10.   Modification or Waiver of Provisions.   Any modification or addition to the terms of this agreement, or the subject matter covered by this agreement, shall only be done and be effective if made in writing and executed with the same formality as this agreement. The failure of either party to insist upon performance of any of the provisions of this agreement shall not be a waiver of any subsequent default of the same or a similar nature.   In the event either party defaults in any of his or her obligations under this agreement, the defaulting party shall be liable to the other party for all reasonable expenses incurred by the other party, including actual attorney's fees, costs and litigation expenses, in pursuing enforcement of the obligations created by this agreement.

11.   Binding Effect.   This agreement shall be fully effective and binding upon the parties and their personal representatives, estates, and assigns as of the date the last party actually signed this agreement. Any property acquired by either party after the effective date of this agreement shall be the sole and separate property of the party acquiring such property.

12.   Consent to Judgment.   Wife hereby acknowledges that Husband is represented by Marek & Yarbro, P.A., and that she has employed Dickerson, Fisk & Vandiver to represent her in this proceeding. Wife hereby consents to the entry of a Final Decree

20

10

of Dissolution of Marriage incorporating this Child Custody, Support and Property Settlement Agreement as the Order of the Court, and consents to entry of a Final Decree of Dissolution of Marriage, at any time, without any further appearance by her in this matter and without any further notice to her.

IN WITNESS WHEREOF, the parties have executed this agreement on the ___19th___ day of ___May___, 1987.

_____
Teresa A. Simmons, Wife

_____
Paul D. Simmons, Husband


STATE OF OKLAHOMA     )
                      )ss.
COUNTY OF OKLAHOMA    )

The foregoing instrument was acknowledged before me this ___19___ day of ___May___, 1987, by Teresa A. Simmons.

_____
Notary Public

My commission expires:
_May 9, 1988_


STATE OF NEW MEXICO  )
                     )ss.
COUNTY   OF   EDDY   )

The foregoing instrument was acknowledged before me this ___15___ day of ___June___, 1987, by Paul D. Simmons.

_____
Notary Public

My commission expires:
_4-29-89_

I HEREBY CERTIFY THE
ABOVE IS A TRUE AND CORRECT
COPY OF THE ORIGINAL FILED
ON _6-1-87_
WITNESS MY HAND AND SEAL THIS
_2-12-13_
ERIC ELLIS
CLERK OF DISTRICT COURT
BY _____ DEPUTY

21